## CHARLESTON.

Fouse *et al. v.* Gilfillan *et al.*

Submitted February 10, 1898—Decided November 19, 1898.

1. Married Women—*Wife's Separate Estate—Contracts—Charges on Separate Estate.*

G., a married woman, together with her husband, enter into a written contract, under seal, dated June 25, 1892, with F., to erect a three-story double brick building on her lot, in the city of Parkersburg, according to specifications, for which she is to pay to F., in payments as in said contract set forth, six thousand five hundred dollars, (three thousand two hundred and fifty dollars is to be paid as the work progresses, and the balance, one thousand six hundred and twenty-five dollars, in one year from the date of the completion of the work, and one thousand six hundred and twenty-five dollars in two years from the completion of the work, to be evidenced by negotiable notes, with the bank discount added), and to execute a deed of trust upon said property to secure the balance unpaid, when building is completed. This contract is signed and sealed by all the parties, but not acknowledged. On the 26th day of September, 1892, another agreement or addendum is made to said agreement, designated as: "Modification of an Agreement Made and Entered into on the 25th Day of June, 1892. This agreement, made and entered into this 26th day of September, 1892, by and between Mrs. E. M. Gilfillan and Edward Gilfillan, parties of the second part,"—which agreement provides that F., shall provide and additional story, the fourth story to be finished for a hall, and the price therefor to be agreed upon, as well as any changes in the plans that might be made, and, if the parties could not agree upon the price, their differences were to be submitted to a third party, and specifically refers to the original agreement of June 25th, and in terms makes it part of this. The addendum also set forth that the contract was made, and the price to be paid, for the improvement of G.'s separate real estate, and declared that the debt

thereby contracted was created and incurred for that purpose, and expressly charged her (lot) separate real estate, and all the improvements thereon, with the payment of said debt mentioned in the original agreement, and with the amount of any and all sums necessary to put on the fourth story, and any other modifications that might be agreed upon, which addendum and modification was also signed and sealed by the said G. and husband; and the paper, thus completed, was by them duly acknowledged on the 7th day of October, 1892, and duly recorded on the 1st day of November, 1892. *Held* to be a valid contract, under section 12, chapter 66, of the Code, as amended by chapter 109, Acts 1891, and to create a charge and liability upon said property for the price of such improvements. (p. 230).

2. MARRIED WOMEN—*Wife's Separate Estate—Purchaser.*
    A purchaser of such property takes it with notice of such charge and liability. (p. 231).

3. NOTARY PUBLIC—*Certificate—Acknowledgment.*
    The certificate of a notary public to said paper, that "E. M. G. and E. G., whose names are signed to the foregoing writing, have this day acknowledged the same before me, in my county aforesaid," is sufficient to show the acknowledgment of the whole paper dated June 25 and September 26, 1892. (p. 228).

4. RECORDATION—*Certificate—County Clerk.*
    The certificate of the clerk of the county court of the proper county to said paper, that the foregoing writing, bearing date on the 25th day of June, 1892, with the certificate of acknowledgment thereto annexed, was on the day mentioned duly admitted to record in his said office, is sufficient evidence of the recordation of the whole paper. (p. 227).

5. IDENTITY OF DOCUMENT—*Reference—Certificate—Date—Deed.*
    A reference, by the certificate of acknowledgment or of recordation to the deed as "the foregoing writing," is sufficient to identify it as the deed which was acknowledged or recorded, as the case may be, without giving the date of the deed. (p. 228).

6. WITNESS—*Competency of Witness—Transactions with Decedent—Contracts.*
    In a suit growing out of said contract, after the decease of G., the testimony of F. is competent to prove materials furnished for, and labor and work done on, the building, under the exception in section 23, chapter 130 of the Code, providing that no party to any action, suit, or proceeding shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination deceased, etc. (p. 235).

7. WITNESS—*Competency of Witness—Transactions with Decedent—Test of Admissibility.*
    In such a case the test of the admissibility of the testimony is, does it tend to prove what the transaction was? (p. 232).

Appeal from Circuit Court, Wood County.

Bill by Fred Fouse against Elizabeth M. Gilfillan and others.   A decree was rendered from  which complainant and defendant Herman Fouse appeal.

*Reversed.*

J. G. McCLUER, for appellants.

TURNER & TURNER, for appellees.

McWHORTER, JUDGE:

On the 25th day of June, 1892, Herman Fouse entered into a contract in writing with Edward Gilfillan and E. M. Gilfillan, his wife, to furnish the material and work and build a three-story double brick building on the lot of said E. M. Gilfillan according to the specifications given,—the first story to be business rooms, the second story for dwellings, and the third story for a hall,—for which building Fouse was to be paid the sum of six thousand five hundred dollars, as follows:   Five hundred dollars when the stonework should be completed, eight hundred dollars additional, when the second tier of joists were on, eight hundred dollars when the building was under roof, one thousand one hundred and fifty dollars when building completed, one thousand six hundred and twenty-five dollars, in one year form date of completion, and the like amount in two years from said date; said payments to have added to them bank discount, to be included in notes to be given by the party of the second part, negotiable and payable in some bank in the city of Parkersburg, and a deed of trust to be given on the lot and building to secure their payment.   This contract was signed and sealed by the parties thereto, but not acknowledged and recorded.   Afterwards, on the 26th day of September, 1892, an addendum was made thereto, designated as "Modification of an Agreement Made and Entered into on the 25th Day of June, 1892," by the parties of the second part, Mrs. E. M. Gilfillan and Edward Gilfillan, to the effect "that in consideration of the premises, conditions and stipulations in said original agreement contained, it is hereby agreed that Herman Fouse shall build an additional story to the building therein mentioned," and providing that said fourth

story was to be finished for a hall, and the price to be paid was to be agreed upon between the parties, and, in case they could not agree, they were to select a third person who should fix the amount to be paid to Fouse for said work, such finding to be binding on both parties, and, further, that any and all changes in the plans of said building should be paid for at the same price for the same class and kind of work as in the original agreement specified and any work or material which might be dispensed with was to be deducted from the contract price in the same proportion and at the same price mentioned in the original agreement, and that said agreement was made and the price to be paid Fouse was for the improvement of the separate real estate of the said E. M. Gilfillan, who was a married woman, and that she thereby declared that the debt for the building of the brick house mentioned in said original agreement, which was there referred to and made a part thereof, was created and incurred for the purpose of improving her separate real estate the brick building was to be constructed upon, and that the said E. M. Gilfillan thereby expressly charged her (lot) separate real estate, and all the improvements thereon, with the payment of said debt mentioned in the original agreement, and with the amount of any and all sums necessary to put on the fourth story, and any other modifications that might be agreed upon. To this modification and addition were annexed the signatures and seals of the said Mrs Elizabeth E. Gilfillan and Edward Gilfillan, and to which was annexed the following certificate of acknowledgment and certificate of recordation:

"State of West Virginia, Wood County, to wit: I, Walter E. McDough, a notary public of said county, do certify that Mrs. Elizabeth M. Gilfillan, and Edward Gilfillan whose names are signed to the foregoing writing, have this day acknowledged the same before me in my county aforesaid. Given under my hand this 7th day of October, 1892. Walter E. McDough, Notary Public."

"State of West Virginia, Wood County Court Clerk's Office, November, 1, 1892. The foregoing writing, bearing date on the 25th day of June, 1892, with the certificate of acknowledgment thereto annexed, was this day admit-

ted to record in said office.   Teste:   B. F. Stewart, C. W. C. C."

On the 12th day of December, 1892, the said Herman Fouse and Fred Fouse entered into an agreement reciting the agreement of June 25, 1892, together with its modification of September 26, 1892, and that in consideration of one thousand dollars then delivered by Fred to Herman, and the agreement of Fred to furnish to Herman money from time to time until the buildings should be completed, Herman assigned to Fred the said writings and agreements of June 25 and September 26, 1892, and made said agreements part of their said agreement, as exhibits therewith, which agreement of December 12, 1892, was signed and sealed by the parties thereto, and duly acknowledged and recorded on February 7, 1893.   On the 10th day of August, 1893, the said E. M. Gilfillan, and Edward Gilfillan, her husband, entered into a further agreement with Herman Fouse, reciting the agreement of June and September, and making the same a part of the said agreement of August 10, 1893, and stating that under said agreements Herman Fouse was to construct for said Elizabeth M. Gilfillan, on her lot in Parkersburg, a four-story brick house, as in said agreements and modifications specified and set forth; that Fouse had gone to work on said house, and payments on such work and material done and furnished had been made by said E. M. Gilfillan, but the house was not completed, and there had not been agreed upon, or in any way fixed, the price to be paid for the fourth story to and in and on said house, and agreed and contracted with each other to stop the work on the house, and to settle with each other for the work that had been done upon, in, and on said house upon the basis and according to the terms and conditions in said argreements in writing set forth and specified, and agreed to an arbitration of any and all matters growing out of the business dealings theretofore had between the parties thereto, and especially between the said E. M. Gilfillan and Herman Fouse, and agreed that all such matters should be submitted for arbitration to three disinterested persons for final decision (arbitrators to be chosen, one by each party, and the two to chose a third), and that the decision of any two

should be binding on both the parties, and their award to be entered up as the judgment of the circuit court of Wood County, by decree on chancery side thereof, at the July term, 1893; that said award should be rendered, and report to the circuit court made, within ten days from the date of the agreement, and the parties waived any rule or summons for entering said award as judgment of the court, and the parties agreed and bound themselve to and with each other to abide by and perform any such award and judgment, which agreement was duly signed, sealed, and acknowledged by the parties thereto. And on the 10th day of August, 1893, said parties chose their respective arbitrators, who chose the third, who rendered their award August 18, 1893, finding the sum of one thousand three hundred and forty-nine dollars and eighty-nine cents, in favor of Herman Fouse as due from E. M. Gilfillan. On the 7th day of October, 1893, Elizabeth M. Gilfillan and Edward, her husband, conveyed, by deed of that date, the lot and building, so erected, but not completed, to the appellee M. J. Hughes, in consideration of seven thousand dollars, of which one thousand two hundred and fifty dollars was paid in cash, and certain other sums, recognized as valid liens on said property, assumed to be paid to the holders thereof by said Hughes; and for the residue of purchase money, being eight hundred and three dollars and eighty-eight cents, the said Hughes made his note at ninety days, negotiable and payable at the First National Bank, to said E. M. Gilfillan, the vendor retaining her vendor's lien on said property to secure the payment of said unpaid purchase money, which deed was duly acknowledged and recorded on the 9th day of October, 1893, a copy of which deed is exhibited with the bill of plaintiff, Fred Fouse, hereafter mentioned.

At the January rules, 1894, Fred Fouse filed his bill in chancery against Elizabeth Gilfillan, Edward Gilfillan, Herman Fouse, M. F. Tetrick, Jacob Young, Martin J. Hughes, and others, alleging the contract of June 25th and September 26th between Herman Fouse and the Gilfillans, and setting up the assignment thereof by Herman Fouse to plaintiff, and exhibited said agreements and assignment with his bill; that under said assignment he had furnished

Herman Fouse the sum of two thousand three hundred and eleven dollars and twenty-seven cents, which went into the material used in the construction of said building, and to pay laborers who worked thereon, whereby Herman was enabled to proceed with the building until the Gilfillans were unable, failed, and refused to pay the money under the contract; that Herman stopped work from no fault of his, but did so because of the failure of Gilfillan; that Herman stopped work about the middle of the summer of 1893, at which time he had furnished material and done work to amount of eight thousand eight hundred dollars; that they had paid him on account thereof three thousand four hundred dollars, leaving five thousand three hundred and sixty dollars still due Fouse, less whatever amount they may have paid Thomas Savage, which plaintiff was informed was about six hundred and sixty dollars; that several parties had filed mechanics' liens; that the lien of M. F. Tetrick should be only three hundred and ninety-one dollars and seventy-seven cents, instead of nine hundred and eighty dollars and fifteen cents, as claimed; that no part of plaintiff's demand of two thousand three hundred and eleven dollars and twenty-seven cents advanced by him to Herman under their contract of December 12, 1892, had been paid by said Gilfillans, although they often promised to do so, nor had it been returned to him by Herman, and that the Gilfillans had due notice, and agreed in the presence of Herman to pay it, and that the property was liable to plaintiff for it,—and prayed that the cause be referred to a commissioner to ascertain what was due and unpaid to the various persons who performed labor on the building erected by Herman under the contract, and to whom and what materials furnished, and by whom, what amount was due from Gilfillans to Herman under the contract, what amounts had been paid him, what the value of the property, and how much was paid for it by Hughes, and what amount was still due from Hughes upon the purchase of said property; that the parties named as defendants be required to answer under oath; that plaintiff's contract with Herman be specifically enforced; that plaintiff's claim be decreed out of whatever might be found to be due to Herman from the Gilfillans under his contract with them,

after the payment of the amount of all material, lumber, etc., which went into the building, and the labor upon said building, up to the time Herman quit work upon same; that the lien of Tetrick be corrected and set aside, except as to the amount of lumber furnished by him which actually went into the building, and that plaintiff's claim, to that extent, be declared to be a lien upon the property, and the property sold to pay it, and for general relief.

Herman Fouse answered the bill, admitting the contract made with Gilfillans of June 25, and September 26, 1892, and with plaintiff of December 12, 1892; that under the contract with plaintiff he had received from plaintiff two thousand three hundred and eleven dollars and twenty-seven cents, which had not been returned to plaintiff by him, nor paid by the Gilfillans; averring that up to the time when he quit work under his contract, in the summer of 1893, the work and material he had done and furnished amounted to eight thousand eight hundred dollars; that all he had been paid was three thousand four hundred dollars, and that there was then due him from Gilfillans five thousand three hundred and sixty dollars, unless they had paid to Thomas Savage a claim he had against respondent for six hundred and sixty dollars, for which they would be entitled to credit, if paid; that the Gilfillans were cognizant and had notice of the agreement between respondent and plaintiff, and that the same was recorded, as alleged in plaintiff's bill; that Tetrick's lien should be corrected to three hundred and ninety-one dollars and seventy-seven cents, as alleged; that the amount due respondent constitutes a lien upon the property as against the Gilfillans, and also as against any other of his co-defendants who became the purchasers of said property with notice,—and prays for affirmative relief, in that the cause be referred to a commissioner to ascertain and report amount of work performed and material furnished by him upon and for the building, the amount of money paid him under the contract, what amount of lumber was furnished by Tetrick to respondent which was used in the building, what amount is due respondent from the Gilfillans, and to plaintiff as assignee of respondent under the contracts.

Defendant Martin J. Hughes demurred to the bill, and,

without waiving his demurrer, filed his answer, admitting the contract of June 25, 1892; that it was signed by the parties, but never recorded; that afterwards, on the 26th day of September, 1892, said Herman Fouse, of the one part, and Elizabeth M. Gilfillan and Edward Gilfillan, her husband, of the other part, entered into another agreement in writing, styled, "Modification of the Agreement Made and Entered into on the 25th Day of June, 1892," and averred that said contracts of June 25 and September 26, 1892, were absolutely null and void and of no effect; that the same do not comply with the requirements of section 12, chapter 66, Acts 1891, concerning the separate property, rights, powers, and privileges of married women; that all of said work and material done and furnished, respectively, upon said building, were done and furnished under said contracts, and that the same created no liability whatever against Mrs. Elizabeth M. Gilfillan, or any of her separate personal or real estate; that respondent was advised, and so charged, that the contract of September 26, 1892, was an entire contract, and that the statute aforesaid required that the amount of the whole debt created thereby be stated therein; that in case the court should hold that the contract was void as to the fourth story, and for the additional and extra work, so called, and the additional materials furnished for the three stories as originally contracted for, then Herman Fouse had been fully paid for all the work done and material furnished upon and for said three stories, and much more. Respondent denied that Herman had done eight thousand and eight hundred dollars worth of work and material furnished, as alleged, or that Gillfillan had paid him only three thousand four hundred dollars, or that there was still due him five thousand three hundred and sixty dollars on said contract, or any other amount; averred that Herman did proceed with the work until some time during the year 1893, but that he quit work without any fault or failure on the part of Gilfillan to comply with her contract, but that he failed, neglected, and refused to proceed further with the construction of the house, and abandoned the work after Gilfillan had paid him more money than he was entitled to under the contract at that time; that all and every part of work

done and material furnished up to that time had been performed and furnished upon and in the construction of the first three stories. Respondent denied notice or knowledge of the contract between plaintiff and Herman Fouse until after his purchase of the property; denied that plaintiff advanced Herman the one thousand dollars at date of assignment, or the residue of two thousand three hundred and eleven dollars and twenty-seven cents; that at the time of said assignment, December 12, 1892, Herman was insolvent, and plaintiff knew the fact; and that in order to evade the payment of the said debts, and keep the benefits and profits which might arise from the construction of said house, plaintiff and Herman conspired together to cheat and defraud the creditors of Herman and the Gilfillans, and entered into and caused said assignment to be placed upon record; and averred that said assignment was not only fraudulent in fact, but was fraudulent on its face, and that plaintiff was not entitled to one cent under it; denied notice to Gilfillan of said contract prior to September 1, 1893; averred that on the 7th day of October, 1893, he purchased the property without any knowledge of the contract of December 12, 1892, between Fred and Herman Fouse; that he agreed to pay and did pay certain mechanics' liens upon the property, as part of the purchase money. Respondent set up the agreement of August 10, 1893, between Mrs. E. M. Gilfillan and her husband, Edward Gilfillan, and Herman Fouse, agreeing that work on the house should be stopped, and submitting their settlement for the work already done and material furnished to arbitration; also set up the fact of such arbitration, with date and amount of the award of the arbitrators, and averred certain omissions of credits to Mrs. Gilfillan by the arbitrators.

Defendants Elizabeth M. Gilfillan and Edward Gilfillan filed their demurrer and answer to the bill; admitted the contract of June 25, 1892, and the modification thereof on the 26th of September, 1892, but averred that said contracts were absolutely void and of no effect; that they did not comply with section 12, chapter 66, Acts 1891; that the work done and material furnished were done and furnished under said pretended contracts, and created no

liability whatever against respondent, or any of her sepa-
rate personal or real estate, or against respondents, or
either of them; that said contract of September 26, 1892,
was an entire contract, and that the statute required that
the whole amount of the debt created thereby be stated
therein; that if the court should hold that said contract
was void as to the fourth story of the building, and for the
additional and extra work, so called, and additional mate-
rials furnished for the three stories originally contracted
for, then Herman Fouse had been fully paid for all work
done and materials furnished upon and for said three
stories, and much more,—so much more as was necessary
to pay for all the material and labor furnished by said
Fouse in the construction of said fourth story; denied that
the work and material which had been done and furnished
at the time work stopped amounted to eight thousand
eight hundred dollars, or that respondents had only paid
Fouse three thousand four hundred dollars, or that there
was still due him five thousand three hundred and sixty
dollars, or any other sum; admitted that Herman Fouse
proceeded with the work until some time during the year
1893, when he failed, neglected, and refused to proceed
further with the work, and abandoned it, without any fault
or failure on the part of respondents, and after he had
been paid more money than he was entitled to under the
contract at that time; denied that Fred Fouse advanced to
Herman either the one thousand, or the residue of the
two thousand three hundred and eleven dollars and twen-
ty-seven cents, as claimed by Fred; averred that at the
time of said contract between Herman and Fred Fouse,
December 12, 1892, Herman was insolvent, which fact was
well known to Fred Fouse, and that the said contract was
made and placed on record to evade the payment of said
debts, and keep the profits and benefits that might arise
from the construction of said building; that said Herman
and plaintiff conspired to cheat and defraud the creditors
of Herman as well as respondents and entered into said
agreement, and put it upon record, for that purpose, and
that said agreement was not only void in fact, but void
upon its face, and that plaintiff was not entitled to one
cent thereunder; denied that the lien of M. F. Tetrick was

incorrect, set up the agreement between respondents and Herman Fouse of August 10, 1893, to submit their differences to arbitration upon the basis and in accordance with the terms and conditions of the agreements of June 25 and September 26, 1892, and averred that Fred Fouse had full knowledge of, and acquiesced therein, and that an award was made thereunder by the arbitrators as of August 18, 1893, finding one thousand three hundred and forty-nine dollars and eighty-nine cents in favor of Herman Fouse, and exhibited a copy of the said award with their answer, and averred that credits which were omitted by the arbitrators would properly reduce the amount to one hundred and thirty dollars and thirty-four cents, and denied that even that sum was a lien or charge upon said building; averred that Elizabeth M. Gilfillan was the owner of other large, separate real estate, situate in Wood County, totally unincumbered, of sufficient value to satisfy even a decree for the amount claimed by Herman and Fred Fouse, and that, if she be in any way bound to said Herman or Fred Fouse for any sum on account of said contracts, the same should be made out of her said other separate estate, to the exclusion of the property purchased by Hughes from her; and prayed for affirmative relief that said award should be corrected by allowing the credits omitted by mistake of the arbitrators, and that the contracts of June 25 and September 26, 1892, be declared null and void and canceled, and for general relief.

On the 3d day of January, 1895, the cause came on to be heard upon the demurrers, which were overruled, the several answers filed, and general replications thereto; and the cause was referred to W. W. Jackson, one of the commissioners of the court, to ascertain and report upon the matters raised by the pleadings in the cause. On the 16th day of July, 1896, said commissioner tendered his report, together with the exceptions thereto, which was filed by the court; and on the 27th day of November, 1896, the cause was finally heard upon the report of Commissioner Jackson, and the eight exceptions thereto, when the court overruled all of said exceptions, except the eighth, which was sustained, and decreed "that the commissioner should have found and reported that there were no liens upon the

house and lot in the bill and exhibits mentioned and described, and that no liens existed for any amount that was or may be due from the Gilfillans on account of the construction of the house under the contract of June 25, 1892, and September 26, 1892, upon said lot and building, and in that particular the court doth correct said report, and so finds," and proceeded to decree that said contract of June 25th and September 26th created no lien upon said house and lot, and that defendant Hughes, when he purchased the same, took them free from any lien or other liability arising out of said contract, and that said Hughes and said house and lot are not liable to the said Herman Fouse or Fred Fouse for any sum upon any demand made in the bill and proceedings; and dismissed the bill as to said Hughes, and decreed that said Fred and Herman Fouse, or either of them, recover nothing of the said Hughes, and that said house and lot are liable in no way to any of said demands made in the bill and proceedings; and the court further decreed that it appeared that at the time of the execution of the contract of June 25 and September 26, 1892, said E. M. Gilfillan owned property other than the house and lot, and the court not then deciding whether such other property and said Gilfillans are liable to said Fred Fouse and Herman Fouse, or either of them, for any amount, the cause was continued, and plaintiff granted leave to file an amended bill within sixty days of the rising of the court, if he should be so advised. From which final decree said Fred Fouse and Herman Fouse appealed to this Court, and assign the following errors:

"The court erred in sustaining exception 8 to the commissioner's report, in this: that the court overruled the finding of the commissioner that the claim of Herman Fouse against E. M. Gilfillan for $1,256.02 was a lien upon the property of E. M. Gilfillan under the contracts of June 25 and September 26, 1892, entered into between Herman Fouse, E. M. Gilfillan, and Edward Gilfillan. Second. The court further erted in said decree in declaring that the said Fred Fouse, Herman Fouse, nor either of them should recover anything of Martin Hughes, and the said house and lot were liable in no way to any of the demands made in the said bill of complaint of Fred Fouse filed in

this cause. Third. The court further erred in correcting Commissioner W. W. Jackson's report as to his finding that the claim of Herman Fouse, ascertained by the commissioner at $1,256.02, was a lien upon the property of E. M. Gilfillan, and by decreeing that the said property was not liable for the payment of the said debt to Herman Fouse. Fourth. The court further erred in decreeing that the plaintiff took nothing by his appeal filed in this cause, and virtually dismissed the same as to all parties defendant except Edward Gilfillan. Fifth. The court further erred in its statement in said decree of the fact, which was the dictum of the court, and which does not appear from the record, that Edward Gilfillan was the owner of real estate at the time (on the 25th day of June, 1892), and leaving the plaintiff, Fouse, to prosecute his claim against Edward Gilfillan. Sixth. The court further erred in not decreeing that the claim of Herman Fouse, as ascertained by Commissioner Jackson, was a valid and subsisting lien upon the house and lot mentioned in the bill and proceedings in the cause, and that the said house and lot of ground were bound for the payment of the same in the hands of the purchaser, Martin Hughes. Seventh. The court further erred in not decreeing that the labor and material furnished by Herman Fouse, and placed in the said building, was not a permanent improvement upon the real estate of Mrs. E. M. Gilfillan, placed there under and by virtue of a contract with her, and that the amount found by W. W. Jackson, commissioner, as due to Herman Fouse for the materials furnished, and for the erection of said building, should be, and was, a lien upon the said property under her contract with him of June 25 and September 26, 1892, and that Fred Fouse, the plaintiff in this cause, was entitled to said amount under his contract with Herman Fouse as of date the 12th day of December, 1892. Eighth. The court further erred in not decreeing that M. Tetrick should only be allowed for the value of the lumber and material furnished by him to Herman Fouse which actually was used in the construction of the building upon the Gilfillan lot under his mechanic's lien filed in this case.''

The principal questions involved in this case are whether

the contract made between Elizabeth Gilfillan and Edward Gilfillan, her husband, of the one part, and Herman Fouse, of the other part, dated June 25, 1892, and modified by an addendum thereto on the 26th day of September, 1892, was duly executed, acknowledged, and recorded, and a valid contract, and whether appellee Hughes had notice thereof when he purchased the property from Mrs. Gilfillan, and took conveyance therefor.   This contract was executed while that remarkable provision enacted by the legislature of 1891, in re-enacting section 12, chapter 66, of the Code, was in force.   The first part of the contract, dated June 25th, was signed and sealed by all the parties thereto, but neither acknowledged nor recorded.   Under said section, as re-enacted in 1891, both acknowledgment and recordation were necessary to its validity.   On the 26th day of September, 1892, the said E. M. Gilfillan, desiring a change in the plan of the building, by adding a fourth story thereto, together with her husband, Edward Gilfillan, extended the contract by adding thereto, and in explicit terms contained in the last part of the contract, made that part of the contract dated June 25, 1892, a part of that dated September 26, 1892.   When the last paper was signed and sealed by the said Gilfillans, the paper, as then completed, was duly acknowledged on the 7th day of October, 1892; and on the 1st day of November, 1892, the whole paper was admitted to and spread upon the record together in the proper clerk's office in Wood County.   It is insisted that the addendum, being dated the 26th day of September, 1892, was not recorded, because the clerk, in his certificate of recordation, refers to it as, "The foregoing writing, bearing date on the 25th day of June, 1892, with the certificate of acknowledgment thereto annexed, was this day admitted to record in said office," and failed to mention the modification or addendum by its date, although it follows immediately, spread upon the records with it.   The addendum was what it purported to be,—a "modification of an agreement made and entered into on the 25th day of June, 1892," which modification was made on the 26th day of September, 1892, and made the whole one instrument.   Suppose the clerk, in his certificate, had referred to the paper as dated September 26, 1892, which

refers to another dated June 25, 1892, and makes it a part of it, which paper so referred to is recorded with it; will it be contended that the same was not acknowledged and recorded with, and as part of it? The certificate of the notary taking the acknowledgment treats it as one instrument, certifying that "Mrs. Elizabeth M. Gilfillan and Edward Gilfillan, whose names are signed to the foregoing writing, have this day acknowledged," etc. The only object in referring to the date, either in certificate of acknowledgment or recordation, is to identify the instrument acknowledged or recorded. *Adams* v. *Medsker*, 25 W. Va., 128. The words "foregoing writing," in the clerk's certificate, would have been a sufficient identification, without giving any date; or, if he had referred to the writing as dated September 26, 1892, it would have been a proper and sufficient reference to the whole paper, because that part dated September 26th refers to that dated June 25th, and makes it a part thereof.

But it is contended that the contract is an absolute nullity, because it does not comply with the provisions of section 12, chapter 66, of the Code, for the further reason that it fails to state the whole of the amount of the debt. Said section provides, "But every such charge must be evidenced by a writing duly executed and acknowledged by her, and duly recorded in the proper clerk's office, stating the amount of the debt and for what it was created." We have seen that the writing was duly executed, acknowledged and recorded. This married woman, Mrs. Gilfillan, was the owner of a valuable lot in the business part of the city of Parkersburg, and desired to have erected thereon a double brick building,—the first story to be business rooms, the second for dwellings, and the third for a hall,— and on June 25, 1892, undertook to contract in writing with Herman Fouse, a builder, to furnish the labor and material, and build it, for the gross sum of six thousand five hundred dollars. After work was begun under this contract, although it was not yet complete by acknowledgment and recordation, she decided to change the plan and add another story, which would necessitate some extra work, also, on the lower stories to make the walls strong enough to support the additional work, so that to the contract already

written and signed was added the modification mentioned, and the contract completed.    This contract was for the purpose of improving her separate estate, by erecting the building thereon, and, by its terms, expressly charged the property, her separate estate, and all the improvements thereon, with the payment of said debt mentioned in the original agreement, six thousand five hundred dollars, and "with the amount of any and all sums necessary to be put on the fourth story, and any other modifications that might be agreed upon."    There can be no question about the contract being sufficient, to the extent of the debt specified in the contract; and there is a distinct provision in the contract of June 25, 1892, to secure by deed of trust a balance of three thousand two hundred and fifty dollars, and no provision for deferred payments made in that part of the contract for the fourth story and changes dated September 26th.    Work proceeded and payments were made under said contract until in the summer of 1893, when, by mutual consent, the work was stopped on said building, and the parties agreed to submit to arbitrators the matters in difference between them, and to settle to and with each other for the work that had been done upon and in and on said house upon the basis and according to the terms and conditions as in said agreements of June 25 and September 26, 1892, set forth and specified, as shown by a contract in writing between said Elizabeth M. Gilfillan and Edward Gilfillan, her husband, and Herman Fouse, dated August 10, 1893, which contract was duly acknowledged by the parties, and referred to both in the answer of defendant M. J. Hughes and in that of E. M. and Edward Gilfillan, and which contract was brought to this Court on *certiorari* sued out on motion of appellee Hughes, as part of the record in the cause.

On the ——— day of February, 1893, the legislature reenacted chapter 66 of the Code, and repealed the restrictions and limitations upon married women in relation to charging their separate property and estate, as contained in said section 12, chapter 109, Acts 1891 (section 12, chapter 66, Code); and by said contract of August 10, 1893, Mrs. Elizabeth M. Gilfillan recognized the said contract of June 25th and September 26th as valid and binding, and

agreed thereby to settle. upon a · *quantum meruit* for the work already done; and the record shows that the parties actually went on under the said contract of August 10, 1893, and tried their matters before the arbitrators selected thereunder, who returned an award finding on the hearing of the whole matter in favor of Herman Fouse the sum of one thousand three hundred and forty-nine dollars and eighty-nine cents. Appellee contends: "There can be no recovery upon a *quantum meruit*, since the labor was performed under a special contract. Fouse could only claim to recover the contract price, first having shown that he had fully executed it,"—and cites many authorities in support of this proposition. His proposition of law is · not objectionable, but it has no application to this case as it stands. The work was not completed,—the Fouses say, because of the failure of the Gilfillans to comply with their contract; the Gilfillans say, because Fouse failed to proceed with the work, and abandoned it, without fault on their part. Whether the one or the other was in default, what boots it, when the parties come together and agree, in writing under seal, duly acknowledged, on the terms of settlement? The work already done is accepted by Mrs. Gilfillan, to be paid for as the arbitrators may decide. Mrs. Gilfillan was authorized by law to make such contract, and until long after it was made she had shown no disposition to repudiate the contract of June 25 and September 26, 1892, so far as the record shows.· The amount remaining unpaid is far less than the sum she bound herself to secure by deed of trust under the first part of the contract, which was a sum certain. What notice had appellee Hughes of any charges against the property when he took the conveyance thereof from the Gilfillans on October 7, 1893? The contract of June 25 and September 26, 1892, was on record. The contract of December 12, 1892, between Fred Fouse and Herman Fouse, was on record. The deed from the Gilfillans to Hughes recited several mechanics' liens existing on the property, which Hughes assumed to pay as part of the purchase money, which mechanics' liens, recognized by both Mrs. Gilfillan and Hughes as valid liens, were based and depended upon the contract of record dated June 25 and September 26, 1892,

which appellee contends was absolutely null and void and of no effect; and the contract of August 10, 1893, set up by Hughes in his answer, had been executed and acknowledged two months prior to the date of his deed from the Gilfillans, and he nowhere negatives the fact of his knowledge of its existence at the time of his purchase, although the paper is introduced into the case by himself. Story, in his Equity Jurisprudence (section 299), says: "Constructive notice is in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted;" and in section 400 he says: "An illustration of this doctrine of constructive notice is, when the party has possession or knowledge of a deed, under which he claims his title, and it recites another deed which shows a title in some other person, then the court will presume him to have notice of the contents of the latter deed, and will not permit him to introduce evidence to disprove it." Appellee Hughes accepts a deed from the Gilfillans, which requires him to pay, as part of the purchase price, certain merchanics'. liens resting on the property purchased, which liens show on their face that they are for materials and work furnished and done upon said property for Herman Fouse, contractor, by virtue of a contract made between Herman Fouse and E. M. Gilfillan and Edward Gilfillan. This is certainly enough to put the purchaser on inquiry as to all liens that might attach to the property under said contract, or growing out of it. As stated in *Reed* v. *Gannon*, 50 N. Y., 349, "It was such notice as, in the language of the authorities, 'would lead any honest man, using ordinary caution, to make further inquiries.'" In the same case Justice Rapallo says: "Notice of any fact calculated to put the party on inquiry is, in the absence of explanation by him, sufficient to charge him with notice of all instruments which on inquiry would be disclosed." Wait, Fraud. Conv. § 373; *Townsend* v. *Little*, 109 U. S., 504, (3 Sup. Ct., 357`, and cases cited.

Appellee's exceptions, Nos. 1 to 6, inclusive, to the commissioner's report, go principally to items of account about which proof is taken, and insist that the commissioner erred in allowing credit to Fouse for any labor em-

ployed upon said building, or for material furnished there-
for, concerning which Herman Fouse testified, for the
reason that said Fouse is incompetent as a witness in said
cause because of the decease of E. M. Gilfillan, under sec-
tion 23, chapter 130, Code 1891. Appellee cites the case of
*Owens* v. *Owens*, 14 W. Va., 88, in support of his excep-
tions on this point. JUDGE HAYMOND, in discussing the
question says: "A contract, whether express or implied
by law, is a transaction. And it seems to me that when
one person testifies that he did work and labor for another
generally, he must be taken as testifying to a transaction,
in legal contemplation, between him and such other per-
son, within the true meaning and intent of the law now
under consideration. Because the testimony of the wit-
ness tends to prove, in legal effect, not only a request to
do the work, but also a promise to pay him therefor what
the same was reasonably worth, and also that he did the
work in consideration of said request. The doing of the
work and labor is the consideration of the contract or
promise to pay, whether express or implied, and, it seems
to me, cannot be separated from the contract or transac-
tion very easily." That was an action by Miss Owens
against the estate of her deceased brother for services ren-
dered him in his lifetime, under an implied contract, if
any, which she was undertaking to establish by her own
testimony; and, as the judge well said, the doing of the
work and labor was the consideration of the contract or
promise to pay, and cannot very easily be separated from
the contract or transaction; and he further (on page
95) gets at the gist of the whole matter by the question,
"Does the testimony tend to prove what the transaction
was?" This is the true test. In the *Owens Case*, the cir-
cuit court had permitted the plaintiff to prove the whole
transaction with the deceased, and it was not easy, by any
means, to separate the doing of the work, the considera-
tion of the contract or promise to pay from the contract or
transaction. In *Strong* v. *Dean*, 55 Barb., 337, where a
similar question arose under the provision of the statute
of New York, that a party should not be allowed to be ex-
amined as a witness in his own behalf "in respect to any
transaction or communication had personally by said

party, with a deceased person against parties who are executors or administrators of such deceased person," it was held, "In such a case the test of the admissibility of the testimony is, does it tend to prove what the transaction was?" In *Stanley* v. *Whitney*, 47 Barb., 586: This was an action on a note for eight hundred and ninety-six dollars brought by the administrator of the obligee or payee. Defendant testifies in his own behalf that the only consideration he received for the original note was the sum of eight hundred dollars, paid him by one R. Held, "that this was in fact testifying to a transaction between the defendant and the deceased intestate, and that the evidence was therefore erroneously admitted." Defendant had testified that he received nothing from the intestate, except the eight hundred dollars which he received from R.; showing precisely, as stated by the court, "what the transaction was between himself and such intestate. It touched the very point in dispute, to wit, that the agreement was usurious and void." The court further say: "It was most clearly a part of the transaction between them, that no more than $800 was advanced as the loan upon which the $800 note was predicated. It is of no consequence what the form of the question or answer was. Evidence to rebut a legal presumption may be just as effectual and as pertinent to establish the true nature and character of a given transaction when used in a negative as in an affirmative form. The only question is, does it tend to prove what the transaction was?" In the case of *Belden* v. *Scott*, 65 Wis., 425, (27 N. W., 356), upon a claim against the estate of a decedent for the value of services rendered during his lifetime in examining and correcting his books of account, plaintiff was asked: "(1) About what time did you commence to work upon those books? (2) Up to what time did you perform labor on those books? (3) What amount of time did you spend in labor on those books? (4) How much time between the 1st of June, 1879, and the 1st of September, 1881, did you spend in labor upon those books of Mr. Caswell? (5) How much time did you spend between those dates in labor upon those books when Mr. Caswell was not present? (6) What was the value of the services performed by you up-

on those books between June 1, 1879, and September 1, 1881? (7) What was the value of the services performed by you when Mr. Caswell was not present, between those dates?" These questions were ruled out by the trial court on the ground that they called for transactions or communications between the deceased and the party. Plaintiff then made the general offer to prove by himself, as a witness, "that the time spent upon those books between June 1, 1879, and September 1, 1881, amounted in all to about one year, and that its value was in the neighborhood of $1,500," which was also refused on the same grounds. The court say: "There can be no question of the competency of this evidence. * * * The statute is not hostile to the proof of all just claims against estates. It was made to protect estates from claims depending upon personal transactions or communications between the claimants and the deceased, established by the testimony of the claimants in the absence of the testimony of the deceased to controvert it." In the case of *Daniels* v. *Foster*, 26 Wis., 686, the defendant introduced a letter to himself, purporting to have been written by plaintiff's testator, acknowledging the payment of the mortgage sued upon, and stating that he had made a discharge, which he would forward, etc., which letter defendant stated he had received in the mail from the testator. The court say: "The case does not seem to come within the letter of the statute, and yet the communication was in some sense personal. But the personal transaction or communication of the statute, no doubt, means a transaction or communication face to face, or by the parties in the actual hearing and presence of each other. In every such case the statute excludes the testimony of the living party, upon the obviously wise and just ground that his adversary, whose cause of action or defense survives, and who was possessed of equal knowledge, and equally capable of testifying to what the transaction or communication really was, has been removed by death, and so cannot confront the survivor, or give his version of the affair, or expose the ommissions, mistakes, or perhaps falsehoods, of such survivor. * * * The law has, therefore, wisely excluded him." In *Stewart* v. *Stewart*, 41 Wis., 624, the court held that: "Though the

grantees in a deed, after the death of their grantor, are not competent witnesses in their own behalf to prove any personal transaction or communication had between them and the deceased grantor, and cannot testify that he delivered the deed to them, nor state any conversation between him and themselves thereto, yet they may testify to other facts which have a bearing upon the question of delivery (as that the deed was in their possession or under their control from the day of its date until they placed it on record;) and the refusal to permit such testimony in this case was error."

Fouse is a competent witness in his own behalf, under section 23, chapter 130, of the Code, in this case, except only "in regard to any personal transaction or communication between himself and the deceased." The contract of June 25 and September 26, 1892, which was the only personal communication or transaction between them prior to the time that Fouse quit work on the building, was complete in itself, and was on record. And what Fouse might testify to as to furnishing labor on or material for the building could in no possible way tend to prove what the transaction was between them. I do not feel that I could go so far as the court went in *Belden* v. *Scott, supra,* which was a case quite similar to that of *Owens* v. *Owens, supra,* in which it is held "that the circuit court erred in permitting the plaintiff to testify as a witness in her own behalf as to her work and labor and services rendered for the deceased, and what things she did in and about the work and labor she claimed to have performed for the deceased in his lifetime, whilst she lived with him, and had taken charge of the household affairs of the deceased, and had sold produce and bought provisions for the house with such produce, and had nursed deceased in his sickness." Syl. point 1.  In *Page* v. *Danaher,* 43 Wis., 221 (Syl. point 2): "In an action by executors upon a note alleged to have been executed and delivered by defendants to plaintiffs' testator, and in which he is named as payee, but which defendants allege to have been altered after execution, one of the defendants, as a witness for the defense, might properly be asked when and with what ink he signed the note, whether he struck out words in the printed form

which appeared to have been stricken out, and other questions which did not call for any transaction or communication had by defendants with such testator personally."

Appellant Fred Fouse was not a party to the contract of August 10, 1893, between Herman Fouse and Gilfillan, and was not bound by the award; but he seems to have made no claim for any amount beyond what, on a fair settlement appears to be due to Herman, and only claims that in his bill. He contested no payments made to Herman after the contract of assignment made on December 12, 1892; and, under all the circumstances of this case, he should not recover anything more than the amount found to be due to Herman on his contract with the Gilfillans, the sum of one thousand two hundred and fifty-six dollars and two cents as found by Commissioner Jackson.

The court erred in sustaining appellees' eighth exception to the commissioner's report, and in finding that the contract of June 25 and September 26, 1892, created no lien or charge upon the property, and that appellee Hughes, when he purchased the property, took it free of liens or other liability arising out of said contract, and in dismissing the bill as to said Hughes, and giving judgment for costs. Said decree of November 27, 1896, is reversed and set aside, and the case remanded, with directions to the circuit court to decree to appellants the said sum of one thousand two hundred and fifty-six dollars and two cents, with interest from August 10, 1893, and that provision be made in said decree for sale of the property to satisfy the same, unless the same shall be paid by a day to be named in said decree; and this cause is remanded to the circuit court of Wood County for further proceedings to be had therein accordingly.

*Reversed.*