### Sidney Daggett *vs.* Samuel Slack & others.

A testator devised part of his real estate to the legal heirs of his deceased brother S. At the time of the testator's decease, the legal heirs of S. were six of his children living, eleven children of his deceased daughter D., and three children of his deceased son L. *Held,* that the heirs of S. took *per stirpes,* and not *per capita,* to wit, his living children one eighth each, the children of D. one eleventh of one eighth each, and the children of L. one third of one eighth each.

This was a petition for partition of the real estate hereinafter described, situate in Pawtucket, and was submitted to the court on the following agreed statement:

"Samuel Slack, late of Attleborough, deceased, brother of Eliphalet Slack, late of Seekonk, deceased, died on the 5th of June 1806. Said Samuel had eleven children, to wit, Samuel Slack, Mary Miller, Rebecca Barrows and Cynthia Robinson,

who are now living; Charlotte Richards, Ruth Robinson and Betsey McDonald, who have died since the decease of said Eliphalet Slack ; Benjamin Slack, Lewis Slack, Lydia Daggett and Asah Slack, who died before the decease of said Eliphalet Slack. Said Benjamin and Asah died without issue ; and it is believed that said Betsey McDonald and all her children are dead, as nothing has been heard from her or them, for many years, although many inquiries have been made, to ascertain whether they, or any of them, were living or not. The said Lydia Daggett died May 6th 1815, leaving eleven children, who are now living ; the petitioner being one of them.

"The said Eliphalet Slack died June 1st 1826, without issue and testate, and by his last will and testament, (after devising all his real estate to his wife for and during her life,) among other things, made the following devise : ' *Fifth.* I give and devise unto the legal heirs of my late brother Samuel Slack deceased, their heirs and assigns, my brick dwelling-house in which I now live, the land and garden belonging thereto bounded northerly by the old road leading from Pawtucket Bridge to Oliver Starkweather's ; easterly by land of Larned Pitcher; southerly by land of said Pitcher and the heirs of Joshua Fisher ; and westerly by the Landing Road, so called ; with all the buildings standing thereon, and all its privileges and appurtenances; they, the said legal heirs of Samuel Slack, to take possession thereof after the decease of my wife ; on condition that said legal heirs of Samuel Slack pay to my executor the sum of seven hundred dollars before taking possession of the premises above devised to them ; which estate I have estimated, after deducting the payment of seven hundred dollars, as aforesaid, at the sum of four thousand eight hundred dollars. It is also my will, that my executor shall receive the rents and profits of the said estate, till the said sum of seven hundred dollars is paid as aforesaid.'

"Sarah Slack, widow of said Eliphalet, died March 14th 1841 ; since which time, a part of the legal heirs of the said Samuel Slack, deceased, have paid to said executor said sum of $700, and taken possession of said premises.

" At the time of the decease of the said Eliphalet Slack, the testator, the children of the said Samuel Slack deceased, who were alive, were Charlotte Richards, Rebecca Barrows, Mary Miller, Cynthia Robinson, Samuel Slack and Ruth Robinson, the eleven children of Lydia Daggett, daughter of said Samuel deceased, and three children of Lewis Slack, son of said Samuel deceased ; the said Lydia and Lewis having died before the said testator, and before the making of the said last will and testament ; the whole number being twenty.

" The petitioner, by virtue of the said devise in said last will and testament, claims to have set off to him one twentieth part of said premises, as his undivided proportion of the same, as tenant in common with the other nineteen ; he being one of the twenty descendants of the said Samuel Slack deceased, to whom the said testator made said devise.    And the petitioner is ready to pay his proportion of the said $700, as soon as his proportion of said estate shall be ascertained.

" A copy of said last will and testament, and of the due probate thereof, is made part of this statement, and the parties agree that partition shall be ordered, and that whatever portion of said estate the petitioner is entitled to, under the will, in the opinion of the court, shall be set off to him."

*Cushman & Colby,* for the petitioner

*Coffin,* for the respondents.

SHAW, C. J.    It being conceded that the petitioner is entitled to a partition of the estate described, the only question is, what is the proportion to which he is entitled.    This depends upon the true construction of the last will of Eliphalet Slack, deceased.    By his will, duly proved, after a devise of the estate in question to his wife, for her life, he proceeds as follows : " I give and devise unto the legal heirs of my late brother Samuel Slack, deceased, their heirs and assigns, my brick dwelling-house," &c. [as set forth in the statement of facts.]    It appears that at the time of the decease of the testator, when the devise would take effect, the heirs of Samuel Slack, who had .ong previously deceased, consisted of six children living, and eleven children of a deceased daughter, Lydia Dag-

gett, of whom the petitioner is one, and three children of a deceased son, Lewis Slack.

There seems to be a slight discrepancy in different parts of the statement of facts. In one part, it is stated that a daughter of Samuel Slack, Betsey McDonald, was living at the decease of the testator ; in the latter part, containing an enumeration of the heirs of Samuel at the decease of Eliphalet, this daughter, Betsey McDonald, is not named. It is further stated that she is supposed to be dead without issue. As those who were heirs of Samuel, at the time of the decease of the testator, took vested remainders, the estate vested in Mrs. McDonald, if she was then living, and, on her decease, would vest in her heirs. But, as the petitioner is the child of a deceased sister of Mrs. McDonald, and would be one of her heirs, by right of representation, I shall consider the question as if she was dead at the decease of the testator, and did not take a share.

There were, then, twenty heirs of Samuel Slack, six children, three grandchildren, children of his deceased son, Lewis, and eleven grandchildren, children of Mrs. Daggett, a deceased daughter, of whom the petitioner is one. If these heirs can take equally, the petitioner is entitled to the one twentieth which he claims; but if he and his brothers and sisters can take only by right of representation the one eighth part which their mother would have taken, he is entitled to one eleventh of one eighth, equal to one 88th part. The question then is, whether these heirs shall take *per capita* or *per stirpes*. And the court are of opinion, that, according to the established rule of law, a devise to " heirs," whether it be to one's own heirs, or to the heirs of a third person, designates not only the persons who are to take, but also the manner and proportions in which they are to take ; and that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be, that they shall take as heirs would take by the rules of descent. Therefore, in the present case, where there are no such words, the true construction of the will is, that the grandchildren take *per stirpes*, and not *per capita ;* and therefore that the petitioner is entitled to one eighty eighth part only of the devised estate

1 Roper on Leg. (1st Amer. ed.) 126.   2 Jarman on Wills, 46 Such presumption, however, will be easily controlled, by any words in the will, indicating a different intention of the testator; as if, after a devise to "heirs," it be added, "in equal shares," or "share and share alike," or "to them and each of them," or "equally to be divided," or any equivalent words, intimating an equal division, then they will take *per capita,* each in his own right.   But when there are no such words, the presumption is, that the testator referred to the familiar law of descents and distributions, to regulate the distribution of his bequest.   [See *Tillinghast* v. *Cook,* 9 Met. 143.]