# CHARLESTON.

J. O. Jackson *et al. v.* Sarah C. Osborne *et al.*

(Nos. 6640 and 6640-A)

Submitted January 22, 1930. Decided January 28, 1930.

*Harper & Baker,* for appellants Shamblin and others.

*Claude L. Smith* and *J. E. Chilton,* for appellants Jackson and others.

*Koontz, Hurlbutt & Revercomb,* for appellee Osborne.

MAXWELL, JUDGE:

J. A. Osborne, a citizen of Kanawha county, died August 4, 1927, survived by his widow Sarah C. Osborne. There were no children. By his will, dated November 13, 1918, he charged his estate with a trust of $10,000.00 in favor of the First Methodist Episcopal Church, South, of Clendenin; bequeathed certain personal property to his wife, and devised to her certain real estate for life with the remainder to his estate; bequeathed certain shares of bank stock to his brother David F. Osborne; devised a one-half interest of a certain farm to his brother Millard F. Osborne; bequeathed $2,000.00 to his sister Mary F. Taylor; bequeathed $1,000.00 to Clinton Shamblin, a son of his deceased sister Susan Shamblin, and $10.00 each to others of the Shamblin children; to each of nine named children of his sister Rosina Jackson, he be-

queathed $1.00; and to his niece Catherine Koontz he devised a half interest in a lot in Clendenin. The residuary clause is as follows: "I desire that the residue of my estate both real and personal, of whatsoever it may consist of wherever found of which I may die seized and possessed, be divided according as the law directs among my legal distributees * * *."

This suit was instituted in October, 1928, by J. O. Jackson and other heirs against Sarah C. Osborne and others for the purpose of having the will construed. A supplemental bill was later filed. K. J. Shamblin and other heirs filed both an original and an amended answer and cross-bill.

Sarah C. Osborne demurred to both the original and supplemental bills and cross-bills. The circuit court sustained her demurrers. Both the plaintiffs and answering defendants prosecute this appeal.

The position is taken by the plaintiffs and by the defendants in the cross-bill answers that the effect of the residuary clause is to direct a division of the residue of the estate among the heirs of the testator. The only difference between the positions of the plaintiffs and the said defendants is as to the proportions in which they claim the heirs should take. The plaintiffs contend that the division should be made among the heirs at law living at the time of the testator's death in shares and proportions according to the law of descent. The position of the said defendants is that the division should be made *per capita* and in equal proportion among all the persons specifically named in the will as objects of the testator's bounty. The contention of Sarah C. Osborne is that the words "legal distributees" used in the residuary clause must be given a technical interpretation, and that she being the only person of that class is thereby vested with the entire residuum both real and personal. We do not adopt any of those contentions, because, we think, for the reasons herein stated, that none of them is consistent with the intention of the testator as disclosed by the language used by him in the residuary clause.

There is no more basic rule of construction to be applied in the consideration of a will than that the inquiry must be directed not to what the testator may have intended to express, "but what do the words used express." *Wills v. Foltz*, 61

W. Va. 262; *Hobbs* v. *Brenneman,* 94 W. Va. 320. Adhering strictly to that wise rule, let us examine the phraseology of the residuary clause. It is to be noted that the testator there provides for the division not only of personal property but of both real and personal property, "according as the law directs among my legal distributees."

Another basic rule in the construction of testamentary instruments is that "technical words are presumed to have been used in the technical sense and are so construed; and words of an established, definite legal signification are presumed to have been used in their definite legal sense, and should be so construed; unless from an inspection of the whole instrument a different meaning clearly appears." *Hobbs* v. *Brenneman, supra.* See also *Cowherd* v. *Fleming,* 84 W. Va. 227. Now, considering the words of the testamentary clause in their technical signification, inconsistencies are manifest. It provides for the passing of both real and personal estate "as the law directs among my legal distributees." But the law of descent and distribution does not direct nor contemplate the division of real estate among distributees. "Distributees" in its technical sense means those among whom the personal estate of an intestate is distributed. "The word distributees as used in section 2639 (Code) means those who would be entitled under the statute of distribution to the personal estate of the decedent if he had died intestate." *Smith* v. *Lurty,* 107 Va. 548. This definition is general. 18 Corpus Juris, 803; Bouvier's Law Dictionary (3rd Ed.) p. 896. If the law does not direct the division of real and personal property among distributees, how then does the law direct such division? It directs the division of real estate among legal heirs, and the division of personal property among distributees. True, they may be the same parties, and again, they may not, as in this case. Evidently the dominant intent of· the testator as disclosed by the language of the residuary clause was to direct disposition of the residuum of his real and personal estate in the manner provided by law. That is what he said. Now if the adding of the ·words "among my legal distributees", when technically construed and applied, adds inconsistency, as already demonstrated, and it appears

that those same words ("among my legal distributees"), as used in the said clause, if non-technically construed, do not contribute to inconsistency, it follows that they should be construed in the latter manner. Now, construing these words as applying to those persons who under the law of descent and distribution would be entitled to take the property, both real and personal, the meaning is clear, that is, legal heirs and distributees; the real estate to be divided among the heirs in the manner provided by law and the personal property to be distributed among the distributees in the manner provided by law. "Ordinarily, however, the technical signification of words and technical rules must yield to the obvious intent of the testator as gathered from the instrument as a whole. All rules are designed for that purpose. *Couch* v. *Eastham,* 69 W. Va. 710. Rules of construction have their legitimate function when they are needed to understand the purpose intended to be embodied in the language used in the will." *Totten* v. *Dawson,* 104 W. Va. 274.

"A primary or dominant intent must prevail over a secondary intent where the two are inconsistent. This rule as to the primary or dominant intent is expressed in different language by different authorities. By some the primary intent is termed the general intent, by others the paramount intent. * * * The effect of this rule is that where two clauses are inconsistent, they must be construed so as to give effect to the intention of the parties as collected from the whole instrument." *Morgan* v. *Morgan,* 60 W. Va. 327.

It is true that this construction will operate to pass valuable property to persons who apparently had been cut off by the will with one dollar or ten dollar bequeaths, and thereby there would seem to be inconsistency between the residuary clause and those bequeaths; but on the other hand, the construction adopted by the circuit court and urged in our conference, passing to Sarah C. Osborne the entire residuum, would involve the inconsistency of vesting in her the remainder in the particular real estate in which she had been specifically devised only a life estate. There is inconsistency inherent in the will. All cannot with legal property be eradicated, and we do not attempt it.

In the light of the foregoing we are of opinion to reverse the decree of the circuit court and to remand the cause for further proceedings to be had in conformity herewith.

*Reversed and remanded.*

HATCHER, JUDGE, dissenting:

The origin of the word "distributee" is lost in Colonial times. It appears in a statute passed by the General Assembly of Virginia, in 1785. See 12 Hening 146. John Marshall referred to "the distributee" in a brief filed in 1797 in the case of *Cutchin* v. *Wilkinson*, 1 Call. 1, 5. The word was used in the opinion of *M'Candlish* v. *Hopkins & Hodson*, 6 Call. 208, 210, decided in 1814. It has since then appeared in every code of both Virginia and West Virginia and has been referred to in a host of decisions in each state. It is a technical word with a definite meaning which has not varied for more than a century. The will indicates that it was prepared either by a lawyer or by one familiar with legal terms. The words "bequeath" and "devise" are each correctly used in their technical sense, three separate times in the will. The technical definitions of those words are no better established than is the technical definition of "distributees." The fact that the testator used the other technical words advisedly is very persuasive that he understood the technical meaning of the word "distributee." Why he selected his distributees as the class to receive his residuary estate, is not apparent. Nor is it necessary that it should be. The selection of the class was the testator's sole prerogative. I fear, however, that the eccentricity of the selection has caused the majority of the Court to regard it with suspicion, and to lose sight of that prerogative.

It is quite common in wills for a testator to name a class in relation to a gift of his residuary estate. The words used more frequently to designate such a class are "heirs," "issue," "relations," "next of kin," "children," etc. "A bequest to a number of persons not named but answering a general description is a gift to them as a class." Delenger's Estate, 170 Pa. 104. Any word or expression which classifies the beneficiaries should therefore serve for this purpose. A

"legatee" is the donee of personal property under a will. The word "legatee" is just as closely associated with personal property as is the word "distributee"; yet this Court in *Hobbs* v. *Brenneman,* 94 W. Va. 320, held that a gift of the residuary estate to the legatees carried all of the estate both real and personal to the exclusion of certain devisees named in the will. The word "heirs," technically defined, applies to the persons entitled by law to inherit by descent the real estate of an intestate. 28 R. C. L. 247. This word is no more applicable technically to takers of personal property than the word "distributees" is to takers of realty. "The word 'heirs' has no legal significance in respect to persons entitled to succeed to the personal property of the intestate." *Hopkins* v. *Miller,* 92 Ala. 513. The word has even been declared to be a *misnomer* when used to denote succession in a gift of personalty. *In re McCrea,* 180 Pa. 80, 81. It is not questioned, however, that heirs will take personalty under a testamentary gift to them of blended real and person property. It is said that the word "heirs" in such cases is used merely "to describe the persons who are to take and not to fix the interest which would vest in each person by virtue of his heirship." *Bisson* v. *R. R. Co.,* 143 N. Y. 125, 129. Why then when the situation is reversed should not the word "distributees" also be held "to describe the persons who are to take?" Why under such circumstances should distributees be denied a gift of real estate? The reason advanced therefor in the majority opinion is that inconsistency is sensed between the phrases "divided according as the law directs" and "among my legal distributees," because the law does not direct real property to be divided among distributees. A number of courts of highest repute are committed to the view that in a testamentary gift to a class, with no explanatory words, the law presumes an intention (irrespective of whether the gift be of personal or real property) that the gift shall be divided among the members of the class, according to the laws of descent. *Daggett* v. *Slack,* 49 Mass. (8 Met.) 450, 453; *Dunlap's Appeal,* 116 Pa. 500; *Fraser* v. *Dillon,* 78 Ga. 474, 475; *Lyon* v. *Acker,* 33 Conn. 222; *Henry* v. *Thomas,* 118 Ind. 23, and the authorities cited in *Collins* v. *Feather,* 52 W. Va. 107,

111.   The case of *Ross* v. *Kiger*, 42 W., Va. 402, 412, 413, also leans that way.   If such responsible authority finds no inconsistency in presuming such an intention when none is expressed, how is such a gift made ambiguous by the expression of the intention?

Admit, for the sake of argument, that the two phrases are abstractly antagonistic when applied to real property; nevertheless the will itself offers a reason for associating the phrases.   It appears therefrom that the testator had two brothers and one sister living and two deceased sisters, each of whom left children, referred to by name in the will.  ·The testator, of course, realized that his distributees were related to him in different degrees of consanguinity.   Is it not entirely plausible that he desired to prevent any possibility of the nieces and nephews sharing *per capita* with his surviving brothers and sisters and used the phrase "divided according as the law directs" to insure that the nieces and nephews should take only *per stirpe* as the statute of descents provides? Other courts have so held.   In *Woodward* v. *James*, 115 N. Y. 346, 358, the testator had directed that certain property should "be divided among the remaining heirs according to law." The court held: "This undoubtedly means according to the law which governs in a case of intestacy.   It evidently respects the quantity of interest, as well as the persons who are to take, for the division, that is the proportion, is to be according to law."   The phrase "according to law" is assuredly synonymous with "as the law directs."   In *Fielden* v. *Ashworth*, Vol. 20 L. R. (Eq. cases) 410, the high court of chancery of England held that a gift· to be distributed "to my relatives * * * as the law directs," indicated a division under the statute of distributions.   The holding of the above courts is natural and reasonable.   The construction of the majority here—that the words under consideration imply the descent of realty to distributees *under the law*—seems to me unnatural and strained, and is unsupported by any authority so far as diligent search has discovered.   It is unreasonable that one with the exact knowledge of legal nomenclature displayed in the rest of the will should have been so ignorant of the law of descents as to suppose that real property passed to the

*"legal distributees"* thereunder. · Where there are two constructions of testamentary phrases, one strained and provoking discord—the other natural and promoting concord, it is assuredly our duty to adopt the latter, whether or not it meets with our own personal view of what the testator should have meant. We have no right to qualify a disposition of property merely because it is unusual.

Let us scan closely the sentence under consideration: "I desire the residue of my estate both real and personal * * * to be divided according as the law directs among my legal distributees." A liberal consideration thereof leads me to the following analysis: The testator realizing that his residuum would contain both real and personal property, blended the two kinds of property (for the purpose of his gift) unmindful of their differences under the law. He then directed that the residue, thus unified, should be *divided among*—not descend to—his legal distributees. The majority opinion in effect implies the words "descend to" along with "divided among." Why the implication? It was not descent under the law which the testator desired; he was arranging the descent himself. It was only the *division* that the law directs, which he prescribed. The sentence is intelligible without the addition, as property may be divided according to law among persons who would not receive it by operation of law. The rules governing descent under the law are entirely distinct from those governing the division of property thereunder. Neither set of rules is dependent on the other. If the testator makes no disposition of his residuary estate, the law determines both the descent and division. The very attempt to dispose of the residuum indicates that he desires a disposition which differs in some way from that arranged by the law. Here, the testator by express words, adopted the division of his property provided by law. Consequently, the only other purpose he could have had in attempting to make a residuary disposition was to name beneficiaries who differed in some respect from those designated by law. In conferring real property on his distributees he selected a set of donees, different from those appointed by the law. This difference discloses the only purpose of the residuary clause. This pur-

pose should therefore dominate an expression ancillary thereto. If his selection be enlarged by judicial construction to include heirs, then his beneficiaries become the same as the law would provide, were he intestate; and such construction strips his attempt to dispose of his residuum of any purpose. In other words, such a construction makes the testator *intestate* as to the residuum, heedless of his attempt to be testate thereof. It would seem that the word "legal" should dispose of the hypothesis that the word "distributees" was used in a "non-technical sense." No other purpose is apparent from its use except to limit the residue to the distributees begotten by the law, and to exclude therefrom the promiscuity of the laity.

The majority opinion concedes that the paramount rule of testamentary construction is to ascertain the testator's intention from the words used, giving to technical words technical definitions. With all deference—the opinion then seemingly makes no attempt to apply the rule but turns to an exception. I find it impossible to reconcile myself to the view that when the testator wrote "divided according as the law directs," he was either careless or confused and meant to write "descend to and be divided according as the law directs." Neither can I agree that when he wrote "legal distributees," he was indifferent or unorthodox and meant "distributees and heirs." Therefore, I respectfully dissent from the majority opinion.

JUDGE LIVELY authorizes me to say that he joins in this dissent.