STATE *ex rel.* WILLIAM REMKE, JR., *et al., etc.*

*v.*

RAYMOND J. FALLAND, *Clerk,* COUNTY COURT OF OHIO COUNTY, *etc., et al.*

(No. 12033)

Submitted May 17, 1960.     Decided June 21, 1960.

*McCamic & Tinker, Jay T. McCamic,* for relators.

*Gilbert S. Bachmann, Francis J. Love,* for respondents.

BROWNING, PRESIDENT:

In this proceeding, William Remke, Jr., and others, Trustees of the Moundsville Baptist Church, petition-

ers, seek to prohibit respondents, Raymond J. Falland, Clerk of the County Court of Ohio County, Andrew C. Schiffler, Commissioner of Accounts for Ohio County, and Harold A. Nagle and Eugene Nagle, Administrators c.t.a. of the estate of Charles P. Hoffman, deceased, from proceeding further upon petitioners' claim against the Hoffman estate until the rights of the parties shall have been determined.

On November 6, 1957, Hoffman executed a writing whereby he pledged to give to the Moundsville Baptist Church, for the purpose of erecting a new church and educational building, $150,000.00. The writing provided for payment of the amount pledged over a three year period and contained the following notation: "This pledge may be increased, decreased or cancelled by notifying the Building Fund Financial Secretary or the Pastor." Pursuant to this pledge, Hoffman, in 1957 and 1958, delivered to petitioners shares of stock having a market value on the dates of delivery of $70,000.00. The petition alleges that Hoffman repeatedly assured petitioners that the entire amount of the pledge would be forthcoming and that, in reliance on those assurances, petitioners contracted for materials, work and labor to the extent of $150,000.00, which materials, work and labor were incorporated into the new building.

Hoffman died on July 29, 1958, and his will, dated November 6, 1957, was duly admitted to probate on April 15, 1959. On October 28, 1959, petitioners filed a claim before the respondent Schiffler, to whom the estate of Hoffman had been referred, setting forth the pledge of $150,000.00, and asserting the amount due thereon to be $80,000.00. The respondent Nagles, as administrators c.t.a., filed a counter-affidavit asking that the claim be rejected for the reasons, among others, that: (1) There was no showing of consideration; (2) the writing shows a right to cancel, which right has been exercised by the administrators; and (3) the pledge was cancelled by operation of law upon the adjudication by the County Court of Ohio County

on June 10, 1958, that Hoffman was mentally incompetent. The commissioner set the claim for hearing on January 14, 1960, at which time petitioners appeared by counsel and filed an amended and supplemental claim setting forth the pledge, the oral assurances, and intimating that the claim was for an unliquidated amount. Petitioners also appeared "specially" by counsel and filed written objections to the jurisdiction of the Commissioner on the ground that the counter-affidavit raised issues determinable only in a judicial proceeding and refused to waive their right to a jury trial thereof. The respondent commissioner of accounts found that he had jurisdiction to hear and determine the issues and set the matter for hearing on March 24, 1960. Petitioners excepted to the Commissioner's findings, which exceptions were overruled by the County Court of Ohio County, and a new hearing date scheduled. Previous to the action of the county court, petitioners, on January 28, 1960, had instituted an action of assumpsit in the Circuit Court of Ohio County seeking to recover damages from Hoffman's administrators in the amount of $90,000.00, for breach of the alleged contract to pay $150,000.00.

In the instant proceeding, respondents appeared in response to the rule issued by this Court and demurred on the grounds that: (1) A commissioner of accounts has jurisdiction under the provisions of Code, 44-2, to hear and determine the issues involved; (2) petitioners have elected to invoke that jurisdiction; (3) petitioners' action in assumpsit is barred by the statute of limitations (Code, 44-2-26); (4) the claim discloses on its face that it is an unenforceable charitable subscription, revocable at the will of the maker; and (5) the extraordinary remedy of prohibition will not lie where petitioners can obtain the relief they seek by simply dismissing their claim before the Commissioner. Respondents also answered admitting the factual allegations of the petition, but denying the arguments and legal conclusions therein.

Code, 44-2-1, provides: "Upon the qualification of any personal representative, the estate of his decedent shall, by order of the county court to be then made, be referred to a commissioner of accounts for proof and determination of debts and claims, establishment of their priority, * * * ."

Code, 44-2-8, provides: "Whenever at the death of any person there shall be a contingent or unliquidated claim against his estate, or an outstanding bond, recognizance or undertaking upon which the deceased shall have been principal or surety or indemnitor, and on which at the time of his death the liability is still contingent or unliquidated, the claimant or the surety shall have the right to file with the commissioner at the time provided for in the notice, proof of his claim in the same manner as other claims, stating in his affidavit the facts upon which such contingent or unliquidated liability is based and the probable amount thereof. When so filed there shall be no distribution of the assets of the estate, except as otherwise provided in this article, without the reservation of sufficient moneys to pay, when the amount is finally determined, such contingent or unliquidated claim, or a proportion thereof equal to what is paid to other creditors of the same class. * * * "

Code, 44-2-17, provides: "The commissioner of accounts in his report on claims shall direct the personal representative to withhold from distribution to beneficiaries sufficient assets to take care of such contingent and unliquidated claims and claims not matured as shall be presented to and proved before the commissioner of accounts, or a proportion thereof equal to what is paid to other creditors of the same class, and such assets shall be so withheld until such contingent liability becomes fixed, or such unliquidated liability becomes liquidated, or until such claims not matured mature, as the case may be, at which time such assets shall be disbursed or distributed as the commissioner in his report may have designated and the circumstances may require. * * * "

All of these statutes are predicated upon the provisions of Article VIII, Section 24, of the Constitution, the pertinent portions of which have been in effect since the formation of this State. The section is entitled "Powers of County Courts", and reads in part: " * * * They shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators, and the settlement of their accounts, and in all matters relating to apprentices. * * * "

In *Ritchie v. Armentrout, et al.,* 124 W. Va. 399, 20 S. E. 2d. 474, after quoting the pertinent provisions of Article VIII, Section 24, of the Constitution, this Court said: "We, therefore, conclude that, as has long been taken for granted and as has been implied heretofore by this Court, a county court, through its commissioner of accounts, has constitutional jurisdiction to try and determine disputed claims presented against the estate of a decedent before the court for administration." In that case, as in the present proceeding, it was contended that the creditor has been deprived of his constitutional right to a jury trial to determine the merits of his case, and, therefore, the adjudication was invalid since the county court was without jurisdiction. It is true that under the provisions of Code, 44-1-22, it is provided that: "A personal representative may sue or be sued upon any judgment for or against, or any contract of or with, his decedent." However, this statutory provision merely provides an alternative remedy for a creditor, and, if he voluntarily chooses to submit to the jurisdiction of the county court by first filing his claim with that body, he cannot thereafter challenge the authority of such court. The same Constitution which guarantees him a right to a trial by jury vests in the county court the authority to adjudicate such matters, and once having made his election he cannot complain of a deprivation of rights under the other provision of the Constitution. That was squarely held in *Ritchie v. Armentrout, et al.,* 124 W. Va. 399, 20 S. E. 2d. 474, and the decision to that effect is here approved.

Therefore, the writ must be denied, and the rule heretofore issued will be discharged.

*Writ denied.*