STATE *ex rel.* EARL J. LINGER AND RUTH W. LINGER

*v.*

THE COUNTY COURT OF UPSHUR COUNTY, *a corporation, et al.*

(No. 12489)

Submitted September 1, 1965.  Decided November 9, 1965.

*Herbert M. Blair, John R. Haller,* for relators.

*Hymes & Coonts, Gilbert Gray Coonts,* for respondents.

HAYMOND, JUDGE:

In this original prohibition proceeding instituted in this Court the petitioners, Earl J. Linger and Ruth W. Linger, husband and wife, seek a writ to prevent the defendants, The County Court of Upshur County, its members Burnam A. Cutright, Royden B. Ringer and Howard C. Gould, Holt G. Martin, Clerk of the County Court of Upshur County, and Paul D. Linger, Administrator of the Estate of Conna Elizabeth Matthews, deceased, from carrying out, enforcing or acting under or by virtue of an order of the clerk of such county court entered June 3, 1965, appointing Paul D. Linger administrator of her estate and an order of the County Court of Upshur County entered June 28, 1965 which confirmed the appointment of Paul D. Linger as such administrator.

Upon the petition and its exhibits, consisting of an agreement and a photostatic copy of the appointment by the county clerk of Paul D. Linger administrator of Conna Elizabeth Matthews, deceased, and the supplemental petition and its exhibits, consisting of a notice by the petitioners to the defendants informing them of the pendency of this proceeding and admonishing them to refrain from any action at the session of the county court to be held on June 28, 1965 leading to the confirmation of the appointment of Paul D. Linger as administrator by the county clerk, and a photostatic copy of the order of the county court confirming such appointment, this Court, on July 7, 1965, issued a rule returnable September 1, 1965, at which time this proceeding was submitted for decision upon the original petition and its exhibits, the supplemental petition and its exhibits, the demurrer in behalf of the defendants, the joint and several answer of the defendents, the County Court of Upshur County, its members and its clerk, the separate answer of the defendant Paul D. Linger, Administrator of Conna Elizabeth Matthews, deceased, the general replication of the petitioners to the answer of the administrator, and the depositions and the written briefs and the oral arguments in behalf of the respective parties.

Conna Elizabeth Matthews, seventy one years of age, the widow of L. S. Matthews, deceased, who together with her husband had been a resident of Upshur County, West Virginia, for several years, on May 22, 1965, left the Hosaflook Nursing Home, located about nine miles from Buckhannon, Upshur County, where she had resided for a period of approximately two months, and by traveling partially on foot and partially by automobiles driven by acquaintances, went to the home of the petitioners at 246 South Main Street, in Weston, Lewis County, West Virginia, where she arrived in the late afternoon of that day and where she remained until her sudden death four days later on May 26, 1965. Enroute from the nursing home to Weston she stopped and had lunch at the home of Audra Franklin Cottrill and his wife at a place known as Reger, located about two miles from Buckhannon. She arrived at the Cottrill home about ten o'clock in the forenoon, had lunch and engaged in some

conversation with Mr. and Mrs. Cottrill and their son Rolland Lee Cottrill, eighteen years of age, who about three o'clock in the afternoon left with her for Weston where they arrived at the home of the petitioners later the same afternoon. When they arrived the petitioner Earl J. Linger was on the porch of his home and he and his wife cordially received their visitor.

When Conna Elizabeth Matthews was at the Cottrill home she told Mabel Cottrill, the wife, that she started to walk on her journey from the Hosaflook Nursing Home and on the way was "picked up" by an acquaintance who was driving an automobile and took her to a point near the Cottrill home; that she was anxious to leave the nursing home because she was mistreated there and had been called vile names; that she wanted to go to Weston to the home of her niece, whom she liked very well, where she could rest; that she said she was going to visit her niece because she wanted to find some place where she would be well treated; that her clothing was still at the Hosaflook Nursing Home; that she did not know how she would get her clothing; and that she talked as if she would later return to Buckhannon. She told the husband Audra Franklin Cottrill that she had been treated rudely at the nursing home and had been called vile names at that place and that she was going to Weston to stay with a niece where she intended to rest for a few days, after which she would come back to Buckhannon and would get "herself a room"; but that she gave no indication that she intended to go back to the nursing home. She also told Rolland Lee Cottrill, the eighteen year old son of Mr. and Mrs. Cottrill, who drove her from their home to the home of the petitioners in Weston, that she had been mistreated at the nursing home; that she desired to go to her niece for a visit; and that she planned to come to Buckhannon later. When she arrived at the home of the petitioners Rolland Lee Cottrill heard her tell the petitioner Earl J. Linger that she had come "over to visit for a while"; and that he treated her cordially and invited her into his home. On her trip to Weston she carried her purse, a satchel, a suitcase and two paper bags and she took with her her bank account books.

Sometime before she started on her journey to Weston Conna Elizabeth Matthews had been a paying guest or lodger for a period of two or three days in the nursing home operated by Mrs. Ada Rohrbough, at French Creek, in Upshur County, West Virginia. She was not a desirable guest at that place because of her uncouth personal habits and the proprietress refused to permit her to stay longer for the additional reason that the regular monthly rate was $60.00 and Conna Elizabeth Matthews was unwilling to pay more than $50.00 per month. Though she was reluctant to do so, she went from the Rohrbough Nursing Home to the Hosaflook Nursing Home with its proprietress, who came to the Rohrbough Nursing Home for her, and she remained at the Hosaflook Nursing Home, which was located about nine miles from Buckhannon, in Upshur County, until she left that place to go to Weston on May 22, 1965.

When she left the Hosaflook Nursing Home on the morning of May 22, 1965, she did not tell the proprietress, Mrs. Hosaflook, who was temporarily absent from the nursing home at the time, that she was leaving and Mrs. Hosaflook did not know where she had gone until after her death when the undertaker came to the home to get the clothes which she had left there when she departed on the morning of May 22, 1965. At that time she had paid the rent for the occupancy of her room at the home until the first day of June, 1965. Sometime before Conna Elizabeth Matthews left she told Mrs. Hosaflook that she wanted to go to Weston to see her niece but that she intended to return to the nursing home and in discussing her trip to Weston she told Mrs. Hosaflook that she did not want her room rented and that she was going to keep her residence at the nursing home. After leaving the nursing home the clothes left by Conna Elizabeth Matthews were placed by Mrs. Hosaflook in boxes which were delivered to the undertaker in Buckhannon after her death.

The father of Mrs. Hosaflook testified that he heard Conna Elizabeth Matthews tell his daughter that she was going to Weston on a visit and that she did not want to give up her room; that she would come back; and that she wanted the room as a place for her to stay.

The acting postmaster at Buckhannon testified that he received word that someone whose identity is not disclosed by the record notified by telephone an employee of the post office on May 22, 1965, to discontinue the delivery of mail for Conna Elizabeth Matthews at the Hosaflook Nursing Home and that such deliveries were discontinued as of that date. The county clerk of Upshur County testified that Conna Elizabeth Matthews was a registered voter in Upshur County and that her name appeared on the registration records in May 1965.

Each of the petitioners testified, over the specific objections of counsel for the administrator Paul D. Linger to all of their testimony, that in the evening of the day of her arrival at their home Conna Elizabeth Matthews told them that she wanted to make her home with them for the rest of her life and that if they would take her, furnish her with room and board and give her such care as she should need they would have everything that she had and that she was able to pay her own way; and that she disliked the nursing home, was tired of moving about, and wanted to make her home with the petitioners during the rest of her life.

The petitioner Earl J. Linger testified that she liked a large bed which, at the time of her arrival at his home, was at his farm located about fourteen miles from his home and that on Monday, May 24, 1965, he and his son went to the farm, got the bed, brought it to his home and placed it in the room which they had assigned to Conna Elizabeth Matthews as her bedroom, and that she slept in the bed in that room the remaining two nights of her life.

The petitioner Ruth W. Linger testified that on Monday, May 24, 1965, when she and Conna Elizabeth Matthews were alone, Conna Elizabeth Matthews dictated an agreement to the petitioner who, at her direction, wrote what she told her to write and that the words she wrote were: "May 24, 1965  After my death and my bills are paid I want Earl and Ruth Linger to have everything we own for their care and the good treatment we have had from them in their home.  This will do until the right papers are drawn

up. L. S. Matthews (Deceased)", all of which the petitioner Ruth W. Linger wrote in her handwriting, and that Conna Elizabeth Matthews then signed the paper by affixing her signature as Mrs. L. S. Matthews. The petitioner Ruth W. Linger also testified that she wanted her to sign the name L. S. Matthews, the name of the deceased husband of Conna Elizabeth Matthews, in order that the paper would cover the property left by him; and that after she had written the foregoing paper she answered a telephone call and did not see the paper until the next day after the death of Conna Elizabeth Matthews when she and her husband found the paper under a square glass bowl where Conna Elizabeth Matthews had placed it. The petitioner Earl J. Linger testified to the same effect with respect to finding the paper in that place. Both petitioners testified that Conna Elizabeth Matthews told them that she had left the nursing home and had come to their home with the intention of remaining there permanently; and that she had become a resident of Lewis County at the time of her death on May 26, 1965.

The petitioner Ruth W. Linger testified that about noon on Wednesday, May 26, 1965, while she was in the kitchen of her home and after some conversation between her and Conna Elizabeth Matthews who was then upstairs in her bedroom, Conna Elizabeth Matthews came downstairs to the kitchen; that when she entered the kitchen she complained that she was dizzy and placed her hand on the kitchen table and that before the petitioner could help her to a chair she fell to the floor; that she was a large woman, weighing about 250 pounds, and that the petitioner was unable to lift her from the floor; that she called to her son who tried unsuccessfully to get word to a doctor but who did get in touch with the city fire department; that its ambulance arrived at the home of the petitioners several minutes later but that in the meantime Conna Elizabeth Matthews had died and was pronounced dead upon her arrival at the hospital to which she was taken in the ambulance. The petitioner Ruth W. Linger also testified that she was a niece of the deceased husband of Conna Elizabeth

Matthews and that Conna Elizabeth Matthews owned real estate near Akron, Ohio.

The paper which the petitioner Ruth W. Linger wrote at the dictation of Conna Elizabeth Matthews was admitted to record in the office of the clerk of the county court of Lewis County and was filed as an exhibit with the depositions in this proceeding and is in this form: "May 24, 1965 After my death and my bills are paid I want Earl and Ruth Linger to have everything we own for their care and the good treatment we have had from them in their home. This will do until the right papers are drawn up. L. S. Matthews (Deceased) Mrs. L. S. Matthews (Wife)". A paper purporting to be a will of Conna Elizabeth Matthews dated December 6, 1952, in which she refers to herself as Conna Elizabeth Matthews, County of Upshur, State of West Virginia, which bequeaths and devises her property to her husband, Lewis S. Matthews, was filed of record in the office of the clerk of the county court of Lewis County on June 18, 1965, but was not proved or admitted to probate. Lewis S. Matthews, the husband of Conna Elizabeth Matthews, predeceased her by several months and it does not appear that any issue, such as a child or the descendant of any child, or beneficiary of his estate survived him other than his widow, the testatrix. Whether that instrument is or is not a valid will, in the absence of any such disclosure by the record in this proceeding, has not been determined and can not be determined in this proceeding. Until the validity of that paper as a will disposing of her property is established, and that as yet has not occurred, the status of Conna Elizabeth Matthews is that of a deceased intestate whose property has passed to her distributees in accordance with the applicable provisions of the statutes governing the course of descent and distribution.

It does not appear from the evidence that Conna Elizabeth Matthews owned any real estate in West Virginia or any property in Lewis County, other than the few articles that she brought and had with her at the time of her death, or that either of the petitioners was a next of kin relative or distributee of Conna Elizabeth Matthews. It does appear,

however, that she left surviving her two brothers, DeWitt Linger and Roy W. Linger, on whose motion Paul D. Linger was appointed administrator of Conna Elizabeth Matthews, deceased, by the clerk of the county court of Upshur County on June 3, 1965, which was within thirty days after her death.

All the testimony of the petitioners with reference to their transactions and conversations with Conna Elizabeth Matthews was specifically objected to by counsel for the administrator, Paul D. Linger, who cross-examined each of them concerning the subject matter of their testimony in chief.

The petitioners contend that inasmuch as Conna Elizabeth Matthews left her place of abode in the nursing home in Upshur County where she had resided for approximately two months and came to their home in Lewis County with the intention of staying there permanently as indicated in her agreement with the petitioners, she had acquired a known place of residence in Lewis County at the time of her death; and that for that reason the county court of Upshur County and its clerk were without jurisdiction to appoint an administrator for her estate and that the appointment and the orders of the county court and its clerk with respect to such appointment are null and void and any action of the administrator appointed by that clerk and of the county court and its clerk under such orders may be prevented in a prohibition proceeding.

On the contrary the defendants insist that the county court and its clerk had the authority to appoint the defendant Paul D. Linger administrator of Conna Elizabeth Matthews, deceased, and that such appointment can not be attacked in a prohibition proceeding; that if prohibition is the proper remedy the petitioners can not maintain such proceeding because they are not persons whose interests would be affected in such proceeding; that the petitioners have failed to show that Conna Elizabeth Matthews left Upshur County with the intention of residing permanently in Lewis County; and that, in consequence, she did not have

a known place of residence in that county at the time of her death.

It is well settled by many decisions of this Court that by virtue of the statute, Section 1, Article 1, Chapter 53, Code, 1931, the writ of prohibition lies as a matter of right in all cases of usurpation and abuse of power when the inferior court does not have jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers. *State ex rel. Heck's, Inc.* v. *Gates,* 149 W. Va. 421, 141 S. E. 2d 369, and the many cases cited in the opinion in that case.

Under Article VIII, Section 24 of the Constitution of this State, county courts have jurisdiction and, as courts of record, are vested with judicial powers in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, and curators, and the settlement of their accounts, and in all matters relating to apprentices. *In re: Boggs' Estate,* 135 W. Va. 288, 63 S. E. 2d 497; *In re: Boyce's Estate,* 146 W. Va. 93, 118 S. E. 2d 318; *State ex rel. Remke* v. *Falland,* 145 W. Va. 364, 115 S. E. 2d 326; *Furman* v. *Hunt,* 135 W. Va. 716, 65 S. E. 2d 1; *In re: Will of Winzenrith,* 133 W. Va. 267, 55 S. E. 2d 897; *Gapp* v. *Gapp,* 126 W. Va. 874, 30 S. E. 2d 530; *Ritchie* v. *Armentrout,* 124 W. Va. 399, 20 S. E. 2d 474; *Boone* v. *Boone,* 123 W. Va. 696, 17 S. E. 2d 790; *Starcher* v. *South Penn Oil Company,* 81 W. Va. 587, 95 S. E. 28; *Tomblin* v. *Peck,* 73 W. Va. 336, 80 S. E. 450.

This Court has held that an appointment of an administrator in a county in which the intestate left no estate and did not reside at the time of his death, is not void and can not be collaterally attacked. Point 1, syllabus, *Colley* v. *Calhoun,* 89 W. Va. 399, 109 S. E. 484. In that case the decedent, a resident of McDowell County, went to Bluefield, in Mercer County, for treatment in a hospital where within a period of two or three weeks he died. An administrator of the deceased intestate was appointed in Mercer County. In the opinion this Court said: "Permanent or legal residence of the decedent in McDowell being conceded for the purposes of this inquiry, the appointment was not void, but

only voidable, and cannot be collaterally attacked or assailed. For the correctness of this holding, it suffices merely to cite the following decisions applying the principle in cases dependent upon strikingly similar facts and circumstances. *Tomblin* v. *Peck,* 73 W. Va. 336; *Wells* v. *Simmons,* 61 W. Va. 105; *Findley* v. *Findley,* 42 W. Va. 381; *Starcher* v. *South Penn Oil Co.,* 81 W. Va. 587; *Cicerello* v. *C. & O. Ry. Co.,* 65 W. Va. 439; *Allen* v. *Linger,* 78 W. Va. 277. An appointment of an administrator by the county court of a county in which the decedent left no estate, is merely voidable, not void and not open to collateral attack. *Fisher* v. *Bassett,* 9 Leigh 119; *Andrews* v. *Avory,* 14 Gratt. 229."

In *Starcher* v. *South Penn Oil Company,* 81 W. Va. 587, 95 S. E. 28, this Court held in point 4 of the syllabus that "The appointment of an administrator by the clerk of a county court, the record of which shows such appointment to have been made in his office in the regular way, and which was reported to the county court at its next regular session after the appointment was made, and by it regularly confirmed, cannot be questioned in a suit brought by such administrator upon a cause of action belonging to the estate of his decedent, upon the ground that such appointment was not made at the clerk's office, but at a point in the county distant therefrom." In the opinion in that case this Court, in dealing with the appointment of an administrator as to which the record of the county court showed such appointment to have been made in the regular way, and in concluding that the record of such appointment can not be attacked collaterally, referring to such appointment, said: "It must be attacked in a suit brought for that purpose or by appeal from the order of his appointment, so that it will be determined once for all whether he is or whether he is not such administrator, and the character of all his acts as such will be at once fixed and determined, and not leave this important and vital question to be determined in each particular suit which it may be necessary for the administrator to bring to vindicate the rights of his decedent's estate. While there are some authorities which hold that lack of jurisdiction of the court appointing an administrator may be shown collaterally, we find the great

weight of authority to be that such cannot be done. An examination of these authorities will also show that to a large extent those cases in which it is held that the jurisdiction may be attacked in a collateral way are in states where the court did not have general jurisdiction to appoint administrators. It may be true that where the power of the court to appoint and qualify personal representatives is limited in its extent, an exercise of this power beyond the limitations conferred could be taken advantage of at any time, but this is not the case where the power over the subject-matter is general. See 11 R. C. L. pp. 77-78, where the question is discussed, and the authorities cited. In a note to the case of *Jordan* v. *Chicago & Northwestern Ry. Co.*, 125 Wis. 581, reported in 4 Ann. Cases 1113, the authorities are collected, and they fully support the above conclusion. * * *. The theory upon which it proceeds is that before a court of general jurisdiction proceeds to act it determines the question of jurisdiction; it finds the facts upon which the jurisdiction is based, and its findings in this regard are no more subject to collateral attack than any other of its findings. So, here, when the court confirmed and approved the appointment of the plaintiff as administrator of Oliver Norman, it ascertained and determined that the clerk in making the appointment acted in accordance with the provisions of law, and its ascertainment of this fact cannot be questioned collaterally any more than any other finding of fact which it had to make in order to determine that it had jurisdiction to make the appointment."

This Court has also said that when an appointment of an administrator is made by the county court in a county in which the intestate left no estate, such appointment, though improper and unauthorized, can not be assailed collaterally. *Tomblin* v. *Peck*, 73 W. Va. 336, 80 S. E. 450. The opinion of this Court in that case contains these statements: "Though an infant is ineligible to appointment as a personal representative and cannot be empowered to enter into contracts as personal representative or otherwise, by an unauthorized appointment, the appointment itself cannot be collaterally assailed or treated as void. Thus, where one person has the right of administration and

another has been appointed, by a court of competent juris-
diction, the person so appointed is the lawful representative
of the personal estate until his appointment has been
rescinded. *Royall* v. *Eppes,* 2 Munf. 479. And a person
appointed administrator in a county in which the intestate
left no estate, wherefore the appointment was improper
and unauthorized, it cannot be collaterally assailed. *Fisher*
v. *Bassett, et al,* 9 Leigh 119. Of course an appointment
made by a court having no authority to appoint an ad-
ministrator or executor in any case or under any cir-
cumstances is absolutely void. But, when the appointment
has been made by a court having jurisdiction and power
to make such appointments in proper cases, and the pro-
priety of the appointment depends upon facts to be ascer-
tained by such court, its action is conclusively presumed
to have been proper in all collateral proceedings." See also
*State ex rel. Nutter* v. *Mace,* 130 W. Va. 676, 44 S. E. 2d
851; *Boone* v. *Boone,* 123 W. Va. 696, 17 S. E. 2d 790; *Brown*
v. *Brown,* 99 W. Va. 615, 129 S. E. 459; *Frazier* v. *Copen,*
95 W. Va. 482, 121 S. E. 503; *Doak* v. *Smith,* 93 W. Va. 133,
116 S. E. 691; *Allen* v. *Linger,* 78 W. Va. 277, 88 S. E. 837;
*Cicerello* v. *Chesapeake and Ohio Railway Company,* 65 W.
Va. 439, 64 S. E. 621; *Andrews* v. *Avory,* 14 Gratt. 229; 33
C. J. S., Executors and Administrators, Section 76a.

From the foregoing authorities it is evident that though
the scope of the jurisdiction of a county court is limited
to all matters of probate, the appointment and qualification
of personal representatives, guardians, committees, and
curators, and the settlement of their accounts, and all mat-
ters relating to apprentices, mentioned in and conferred
by Article VIII, Section 24 of the Constitution of this State,
the judicial power and jurisdiction of such county court
is general in character and to the extent that such court
exercises such jurisdiction in such matters it is regarded
as a court of general jurisdiction. *Starcher* v. *South Penn
Oil Company,* 81 W. Va. 587, 95 S. E. 28. In point 1 of the
syllabus in that case this Court held that "The county courts
have general jurisdiction over the appointment and qualifi-
cation of personal representatives of deceased persons."

This prohibition proceeding constitutes a collateral attack upon the appointment of Paul D. Linger as administrator of the estate of Conna Elizabeth Matthews, deceased, by the clerk of the county court of Upshur County and the confirmation of such appointment by the county court of that county. In making and confirming such appointment the county clerk and the county court ascertained and determined facts which establish jurisdiction to make and confirm such appointment, as indicated in the order of confirmation, and such appointment can not be subjected to collateral attack in this proceeding and the petitioners can not maintain this proceeding for that purpose.

But even if the appointment of Paul D. Linger, as administrator, could be challenged in this proceeding in prohibition, it is manifest from the evidence that the petitioners do not possess a right or an interest which would be affected in such proceeding and that for that additional reason they can not maintain this proceeding. The only interest claimed by the petitioners is such interest, if any, as they may have in the estate of Conna Elizabeth Matthews under and by virtue of the agreement dated May 24, 1965, written by the petitioner Ruth W. Linger at the dictation of Conna Elizabeth Matthews. It is obvious that whatever may be the character of that agreement and whether it is a valid agreement, a question which may not be determined in this proceeding, it is not a valid will for the reason that, as it is not written in her handwriting, it is not witnessed or attested in the manner required by law to constitute a valid will. Even if it is a valid agreement and creates rights or interests in her estate in the petitioners, any such interest does not entitle them to act as administrator of her estate or to nominate a person for such appointment. Under the statute, Section 4, Article 1, Chapter 44, Code, 1931, only distributees who apply within thirty days of the date of the death of the intestate are entitled to a grant of administration or the right to designate the person who shall be granted administration. That statute provides that administration of the estate of a person who dies intestate shall be granted to the distributees who apply, preferring first the husband or wife, and then such of the others entitled

to distribution as the court or the clerk shall see fit to appoint and that if no distributee applies for administration within thirty days from the death of the intestate the court or clerk may grant administration to one or more of his creditors, or to any other person. Distributees of an estate of a person who dies intestate, as mentioned in the statute, are those who would be entitled under the statute of distribution to the personal estate of the decedent who dies intestate, and legatees and devisees are not distributees of the estate. 8 M. J., Executors and Administrators, Section 23; 6 M. J., Descent and Distribution, Section 43; *Jackson* v. *Osborne,* 108 W. Va. 480, 151 S. E. 709; *Smith* v. *Lurty,* 107 Va. 548, 59 S. E. 403. See also *Parrott Estate Company* v. *McLaughlin,* 12 F. Supp. 23.

In the opinion in *Jackson* v. *Osborne,* 108 W. Va. 480, 151 S. E. 709, this Court used this language: " 'Distributees' in its technical sense means those among whom the personal estate of an intestate is distributed. 'The word distributees as used in section 2639 (Code) means those who would be entitled under the statute of distribution to the personal estate of the decedent if he had died intestate.' *Smith* v. *Lurty,* 107 Va. 548. This definition is general. 18 Corpus Juris, 803; Bouvier's Law Dictionary (3rd Ed.) p. 896." In *Smith* v. *Lurty,* 107 Va. 548, 59 S. E. 403, the Supreme Court of Appeals of Virginia, in considering a Virginia statutory provision practically identical with that contained in Section 4, Article 1, Chapter 44, Code, 1931, and in denying the motion of the devisee and legatee under the will of a decedent to appoint her or her nominee as administrator of the estate, in the opinion said: "Miss Smith, while a devisee and legatee under the will, was not a distributee; for the word 'distributees' as used in the sections quoted, clearly means those who would be entitled under the statute of distribution to the personal estate of the decedent if he had died intestate. Not being a distributee, she had no preferable claim to be appointed administrator, nor preferable right to designate another to be so appointed under the statute." In Black's Law Dictionary, Fourth Edition, page 562, the author, citing *Allen* v. *Foth,* 210 Ky. 343, 275 S. W. 804, defines a distributee in these terms:

"An heir; a person entitled to share in the distribution of an estate. This term is admissible to denote one of the persons who are entitled, under the statute of distributions, to the personal estate of one who is dead intestate."

The statutes which prescribe the course of descent and distribution of real estate and personal property of a person who dies intestate are Section 1, Article 1 of Chapter 42, Code, 1931, as amended, and Section 1, Article 2 of Chapter 42, Code, 1931. Section 1, Article 1, of the foregoing chapter to the extent here pertinent, provides that "When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to his kindred, male and female, in the following course: * * * . (d) If there be no child, nor descendant of any child, nor wife, nor husband, nor mother, nor father, the whole shall go to the intestate's brothers and sisters and the descendants of brothers and sisters;". Section 1, Article 2, of the foregoing chapter provides that "When any person shall die intestate as to his personal estate or any part thereof, the surplus, after payment of funeral expenses, charges of administration and debts, shall pass and be distributed to and among the same persons, and in the same proportions, that real estate is directed to descend, except as follows: ". Those exceptions are that if the intestate was a married woman, and leave issue surviving, her husband shall be entitled to one-third of such surplus, and if she leave no issue he shall be entitled to the whole of such surplus; and that if the intestate leave a widow and issue by the same or a former marriage, the widow shall be entitled to one-third of such surplus, and if he leave no such issue, she shall be entitled to the whole of such surplus. As the statute, except with respect to a surviving husband or a surviving widow, provides that the personal estate shall pass and be distributed as real estate is directed to descend, surviving brothers and sisters of Conna Elizabeth Matthews, if there was no surviving husband, child or descendant of a child, mother or father, would be the distributees of her estate.

The evidence discloses that the husband of Conna, Elizabeth Matthews predeceased her by several months and there is no showing in the evidence that she was survivied by any child or the descendant of any child, or by her mother or her father. It does appear that she was survived by two brothers who under paragraph (d) of Section 1, Article 1, Chapter 42, Code, 1931, as amended, and Section 1, Article 2, Chapter 42, Code, 1931, were distributees of her estate. That being so each of them was entitled to appointment as her administrator or to designate a person to be appointed as such administrator; and it appears that they designated the person who was appointed administrator of the estate of Conna Elizabeth Matthews, deceased, on June 3, 1965, which was within thirty days of the date of her death on May 26, 1965. It follows that if the clerk of the county court had the power to appoint the administrator and the county court of Upshur County had the power to confirm such appointment, as this Court, under the evidence disclosed by the record in this proceeding holds that they had, such appointment and its confirmation were in all respects valid and effective and not subject to attack in a prohibition proceeding.

The petitioners not being distributees of the estate of Conna Elizabeth Matthews, deceased, neither of them is entitled to be appointed as administrator or to designate a person for such appointment within thirty days of the date of her death and in consequence do not have a status which entitles either of them to object to or challenge the appointment of an administrator of such estate. For that reason neither of them is possessed of a right or interest in the appointment of an administrator that entitles either or both of them to maintain a prohibition proceeding to prevent such appointment by the county court of Upshur County or its clerk. *State ex rel. Gordon Memorial Hospital, Inc.* v. *West Virginia State Board of Examiners for Registered Nurses,* 136 W. Va. 88, 66 S. E. 2d 1; *Midland Investment Corporation* v. *Ballard,* 101 W. Va. 591, 133 S. E. 316. In the opinion in *State ex rel. Gordon Memorial Hospital, Inc.* v. *West Virginia State Board of Examiners for Registered Nurses,* 136 W. Va. 88, 66 S. E. 2d 1, this Court said: "As a

general rule any person who will be affected or injured by the proceeding which he seeks to prohibit is entitled to apply for a writ of prohibition, but a person who has no interest in such proceeding and whose rights will not be affected or injured by it can not do so. 50 C. J., page 693. In *Midland Investment Corporation* v. *Ballard*, 101 W. Va. 591, 133 S. E. 316, the test of the right of a person to maintain a proceeding in prohibition is stated in these words: 'In the absence of statutory provision, from the decisions, the true rule may be evolved, that the action may be maintained by any person injuriously affected by the action which he seeks to prevent, but not by a person having no interest therein.' "

From the foregoing authorities it is clear that a person who is not a distributee of the estate of an intestate does not have such an interest in the appointment of an administrator of the estate of a deceased intestate as will entitle him to maintain a proceeding in prohibition to prevent the appointment, within thirty days of the date of the death of such intestate, of the nominee of distributees of such intestate as administrator, or to prevent the administrator so appointed from acting as such in the administration of such estate.

Even if the petitioners should possess an interest in the appointment of the administrator of Conna Elizabeth Matthews, deceased, which would entitle them to maintain this prohibition proceeding, they could not be granted the relief which they seek to obtain in this proceeding for the further reason that they have failed to show that Conna Elizabeth Matthews lost or gave up her residence in Upshur County and established or acquired a known place of residence in Lewis County. The burden of proving that she had acquired a known place of residence in Lewis County at the time of her death rested upon the petitioners and they have failed to carry or discharge that burden.

The statements or expressions of intention to remain or reside with the petitioners or concerning the preparation of the paper writing or agreement dated May 24, 1965, made by Conna Elizabeth Matthews to the petitioners were

personal transactions or communications between them and as the petitioners are persons or parties who have an interest in the result of this litigation within the meaning of Section 1, Article 3, Chapter 57, Code, 1931, as amended, all the testimony of the petitioners with regard to such personal transactions or communications is rendered incompetent by that statute and is inadmissible and can not be considered in this proceeding. *Mullins* v. *Green,* 143 W. Va. 888, 105 S. E. 2d 542; *Coleman* v. *Wallace,* 143 W. Va. 669, 104 S. E. 2d 349; *Kuhn* v. *Shreeve,* 141 W. Va. 170, 89 S. E. 2d 685; *Mann* v. *Peck,* 139 W. Va. 487, 80 S. E. 2d 518; *In re: Estate of Hauer,* 135 W. Va. 488, 63 S. E. 2d 853; *Powell* v. *Sayres,* 134 W. Va. 653, 60 S. E. 2d 740; *Sperry* v. *Clark,* 123 W. Va. 90, 13 S. E. 2d 404; *Tyler* v. *Reynolds,* 120 W. Va. 232, 197 S. E. 735; *Poole* v. *Beller,* 104 W. Va. 547, 140 S. E. 534, 58 A. L. R. 207; *Martufi* v. *Daniels,* 99 W. Va. 673, 129 S. E. 709; *Hummel* v. *Marshall,* 95 W. Va. 42, 120 S. E. 164; *Doak* v. *Smith,* 93 W. Va. 133, 116 S. E. 691; *Curtis* v. *Curtis,* 85 W. Va. 37, 100 S. E. 856, 8 L. R. A. 1091; *Cassady* v. *Cassady,* 74 W. Va. 53, 81 S. E. 829; *Goad* v. *Walker,* 73 W. Va. 431, 80 S. E. 873; *Freeman* v. *Freeman,* 71 W. Va. 303, 76 S. E. 657; *Poling* v. *Huffman,* 48 W. Va. 639, 37 S. E. 526; *Fouse* v. *Gilfillan,* 45 W. Va. 213, 32 S. E. 178; *Trowbridge* v. *Stone's Adm'r,* 42 W. Va. 454, 26 S. E. 363; *Robinson* v. *James,* 29 W. Va. 224, 11 S. E. 920; *Seabright* v. *Seabright,* 28 W. Va. 412; *Kilgore's Adm'r* v. *Hanley,* 27 W. Va. 451; *Owens* v. *Owens's Adm'r,* 14 W. Va. 88; *Anderson* v. *Cranmer,* 11 W. Va. 562.

Though counsel for the defendants cross-examined the petitioners concerning their personal transactions and communications with Conna Elizabeth Matthews, the cross-examination did not extend beyond the scope of the examination in chief of the petitioners. As the cross-examination was limited to the subject matter of the testimony of the petitioners in their examination in chief, the objection of the defendants to the testimony of the petitioners was not waived by such cross-examination and it did not remove the ban of the statute or render the testimony of the petitioners competent or admissible. *Poteet* v. *Imboden,* 77 W. Va. 570, 88 S. E. 1024. In that case this Court held

in point 3 of the syllabus that "When timely objection has been interposed to the deposition of an incompetent witness, the objecting party does not waive such objection by a cross-examination, limited to the subject matter of the evidence given in chief."

Without the incompetent testimony of the petitioners there is little, if any, evidence to establish a known place of residence by Conna Elizabeth Matthews in Lewis County at the time of her death. The remaining testimony, consisting of that of several persons with whom she talked shortly before she arrived at the home of the petitioners in Lewis County, was to the effect that her visit to them was a temporary visit from which she intended to return to Upshur County.

The testimony of the proprietress of the Hosaflook Nursing Home, which is undisputed, was that Conna Elizabeth Matthews had paid her rent for her occupancy of her room in the home until the first of the next month after her departure on May 22, 1965, and that all of her personal effects, except a few articles that she took with her, were left by her in the room which she had occupied at that place. The evidence also shows that she told several persons that though she disliked the nursing home she intended to return to Upshur County where she had resided for several years and where she had a known place of residence when she left for Lewis County on May 22, 1965.

In 77 C. J. S., Residence, page 295, there is this statement: "Two fundamental elements are essential to create a residence, and these elements are: (1) Bodily presence in a place. (2) The intention of remaining in that place. Residence is thus made up of fact and intention, the fact of abode and the intention of remaining, and is a combination of acts and intention. Neither bodily presence alone nor intention alone will suffice to create a residence. There must be a combination and concurrence of these elements, and when they occur, and at the very moment they occur, a residence is created." On page 297 of the same treatise the text contains this language: "A residence is lost, however, by the person leaving the place where he has acquired

a permanent home and removing to another place animo non revertendi, and residence is gained by remaining in such new place animo manendi." A person is not considered to have lost his residence when he leaves his home and goes into another state, territory or county, for temporary purposes merely, with the intention of returning. *Littell* v. *Millemon,* 154 Kan. 670, 121 P. 2d 233. A person does not lose his residence by leaving it with an uncertain, indefinite, half-formed purpose to take up residence elsewhere, and until his purpose to remain has become fixed he does not abandon his former residence. *Petition of Mc-Lauchlan,* 1 F. 2d 5. In the opinion in *Ward* v. *Ward,* 115 W. Va. 429, 176 S. E. 708, this Court, quoting from *Presson* v. *Presson,* 38 Nev. 203, 147 P. 1081, said: " 'Residence' is a settled or fixed abode of a character indicating permanency, or at least an intention to remain for an *indefinite* time, being made up of the physical fact of abode and the intention of remaining." Though there are instances in which residence and domicile have different meanings, this Court has indicated, in divorce cases and in a case involving the settlement and distribution of the personal estate of a decedent, that domicile and residence are regarded as synonymous. See *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Boos* v. *Boos,* 93 W. Va. 727, 117 S. E. 616; *White* v. *Tennant,* 31 W. Va. 790, 8 S. E. 596, 13 Am. St. Rep. 896. It has been said that generally, in laws relating to taxation, voting and settlements, residence has the same meaning as domicile. *Petition of McLauchlan,* 1 F. 2d 5.

From the competent evidence in this proceeding it is clear that Conna Elizabeth Matthews did not lose her residence in Upshur County and that at the time of her death she had not acquired a known place of residence in Lewis County. As at the time of her death she had a known place of residence in Upshur County, the clerk of the county court of Upshur County had jurisdiction to appoint an administrator of her estate and the county court of that county had jurisdiction to confirm the appointment made by the clerk and those acts of the county court and

its clerk will not be disturbed or prevented in a prohibition proceeding.

For the reasons stated the writ of prohibition sought by the petitioners must be and it is denied.

*Writ denied.*